SARAH R. MURPHY *v.* PEARL DANTOWITZ ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and COVELLO, JS.

Argued December 7, 1954—decided April 18, 1955

*Douglas A. Finkelstone,* with whom was *George N. Finkelstone,* for the appellant (plaintiff).

*Julius B. Kuriansky,* for the appellees (named defendant et al.).

BALDWIN, J.  The plaintiff brought this action against three defendants to recover damages for personal injuries.  Two of the defendants, Pearl Dantowitz and Morris B. Rettner, were described in the complaint as owners in possession and control of a tenement house in Stamford.  The third defendant is The 170 Lawn Corporation, which at the time the action was brought was the holder of the record title to the premises.  It will be referred to herein as the corporation.

The writ, summons and complaint are dated February 15, 1954.  The complaint is in two counts.

The first count alleges that the plaintiff was injured on January 16, 1954, by reason of the negligence of Pearl Dantowitz and Rettner in permitting a dangerous and defective condition to exist upon the tenement house premises at 170 Lawn Avenue in Stamford which were owned and controlled by them and where the plaintiff was a tenant. The second alleges that subsequent to the date the plaintiff was injured the defendant Rettner, acting for himself and Pearl Dantowitz, fraudulently attempted to secure from the plaintiff a general release of any claims for her injuries. This count also alleges that the premises at 170 Lawn Avenue had been conveyed to Pearl Dantowitz on July 11, 1950; that on February 4, 1954, Rettner caused to be recorded a mortgage deed upon these premises from Pearl Dantowitz to him, dated July 11, 1950, and given, purportedly, to secure an indebtedness of $50,000, which deed was not in fact acknowledged until February 4, 1954; and that, on February 4, 1954, Rettner, acting for himself and Pearl Dantowitz, caused the latter to quitclaim the premises to The 170 Lawn Corporation, which had not been incorporated until February 1, 1954. The second count alleges further that the mortgage is fraudulent and that it and the transfer of title to the corporation were made for the unlawful purpose of hindering, delaying and defrauding the plaintiff. The complaint asks $20,000 damages and that the mortgage to Rettner and the conveyance to the corporation be set aside as invalid and a fraud upon the plaintiff. It asks both legal and equitable relief.

In the writ, summons and complaint both of the individual defendants are described as nonresidents. The officer who made service attached the real estate in question, filing a proper certificate. No claim is

made of any defect in service in that respect. An order of notice was issued by the court which described the two individual defendants as residents of New York, and an address for each was set forth. The order was that notice of the pendency of the action be given by depositing a copy of the writ, summons and complaint and the order of notice in the post office at Stamford by registered letter, postage paid, directed to Pearl Dantowitz and Rettner at their New York addresses. The sheriff's return shows that this was done and that both letters were returned by the postal authorities stamped "Unclaimed." The return shows further that personal service was made upon Rettner at Bridgeport. The service upon the corporation is not questioned. A general appearance in its behalf has been entered by counsel. Each of the individual defendants filed a plea in abatement to the action. Pearl Dantowitz claimed that she was a nonresident and owned no property in the state at the time of the service. Rettner claimed that the personal service upon him was invalid because he was a voluntary witness in the trial of a cause of action in the courts of this state at the time it was made.

The record before us contains a finding of facts on each plea. The certificate of the official stenographer shows that the defendant Dantowitz offered no testimony. Upon the plaintiff's motion, the entire record before the Superior Court, including the sheriff's return and the memorandum of decision on the pleas in abatement, were included in the finding by order of the court. This was done presumably because no testimony was taken at the hearing on the pleas in abatement. This court may take judicial notice of pertinent facts disclosed by the record in a case before us upon appeal. *Hurlbutt*

v. *Hatheway,* 139 Conn. 258, 259 n.1, 93 A.2d 161;
*C. I. T. Corporation* v. *Meyers,* 129 Conn. 514, 516,
29 A.2d 758. The defendants are in no position to
complain if we do this because the burden was upon
them to offer testimony as to the ownership of the
tenement house in order to establish their pleas, and
they failed to offer any. The court found that Pearl
Dantowitz owned no property in Connecticut at the
time the attachment was made. This finding ob-
viously was based upon statements contained in the
record. Its meaning, in the light of other facts, is
not altogether clear. While a memorandum of de-
cision cannot take the place of a finding, we can con-
sult it to interpret a finding. *Goldblatt* v. *Ferrigno,*
138 Conn. 39, 40, 82 A.2d 152; Maltbie, Conn. App.
Proc., p. 120. An examination of the memorandum
of decision discloses that the court sustained the
plea of Pearl Dantowitz on the theory that the legal
title had been conveyed and that therefore she was
not the owner of the property when the attachment
was made. It held further that the plaintiff was not
a creditor because her claim had not been liquidated,
and that before she can proceed to set aside these
claimed fraudulent conveyances she must recover a
judgment in her tort action. The court cited *Bura-
kowski* v. *Grustas,* 134 Conn. 205, 56 A.2d 461, and
*DeFeo* v. *Hindinger,* 98 Conn. 578, 120 A. 314. In
those cases we held that until a claim for damages
in tort had been liquidated by a judgment the plain-
tiff was not a creditor within the contemplation
of the statute, presently General Statutes, § 8295,
which makes provision for the setting aside of
fraudulent conveyances. Therefore, the plaintiff
could not maintain an action under that statute.
Upon common-law principles, however, one who at
the time a transfer of property is made has a right

to recover damages in tort may avoid the transfer as fraudulent if the transfer is made for the purpose of defeating his right. *White* v. *Amenta,* 110 Conn. 314, 318, 148 A. 345. The plaintiff, under circumstances such as those alleged in the complaint in this case, could incorporate in a single complaint a claim for damages in tort and a petition that a fraudulent conveyance made to defeat her claim be set aside. General Statutes § 7819; see *Burakowski* v. *Grustas,* supra, 208; *Norwalk Shores Realty Co.* v. *Clark,* 126 Conn. 688, 691, 14 A.2d 34; *Boiselle* v. *Rogoff,* 126 Conn. 635, 13 A.2d 753; *Fine* v. *Moomjian,* 114 Conn. 226, 228, 158 A. 241.

The first count of this complaint states a cause of action for damages in tort. The second alleges that a fraudulent quitclaim deed and a void mortgage were given to defeat the plaintiff's claim. The prayers for relief ask for damages and that the conveyances be set aside. The question is not whether Pearl Dantowitz has the legal title to the property but whether she and Rettner have interests in it which are subject to attachment. Section 2396c of the 1953 Cumulative Supplement to the General Statutes provides that attachments may be made "against the estate of the defendant, both real and personal." Section 2397c provides that when a defendant is not a resident or inhabitant of this state and has "estate" here which has been attached, service may be made upon him by an order of notice as prescribed in the statute. There can be no question but that real estate fraudulently conveyed can be attached in an action against the claimed fraudulent grantor. *Winchester* v. *Moriarty,* 84 Conn. 678, 682, 81 A. 965; *Sanford* v. *DeForest,* 85 Conn. 694, 698, 84 A. 111. Property fraudulently conveyed may, as to the creditors of the grantor, be treated as if no

conveyance of it had been made, if proper legal proceedings are taken to appropriate it to the satisfaction of the grantor's debts. 1 Swift's Digest 277; *Sanford* v. *DeForest,* supra; *Wilcox* v. *Johnson,* 127 Conn. 539, 542, 18 A.2d 372; *Pepe* v. *Santoro,* 101 Conn. 694, 697, 127 A. 277. True, the fraudulent grantor could not invoke the power of the courts to secure a reconveyance to him, because his own fraud has shut the door of the courts against him. *Gest* v. *Gest,* 117 Conn. 289, 296, 167 A. 909. Nevertheless, he still has an interest in the property which can be reached by his creditors.

If Pearl Dantowitz and Rettner were residents of this state and owned this property and fraudulently conveyed it to defeat the plaintiff's claim, there could be no question that they had an attachable interest in it. How does the fact that Pearl Dantowitz and Rettner are nonresidents affect the situation? Do they have sufficient interest in this real estate to enable the court to proceed against it in rem even though they may never appear generally in this action? In the case of *Barber* v. *Morgan,* 84 Conn. 618, 80 A. 791, we say (p. 622): "The purpose of attachment . . . was to compel the defendant to appear and to answer to the action; and, as is apparent from the statutes, attachment on original process was designed chiefly to reach nonresidents and absconders." As early as *Osborn* v. *Lloyd,* 1 Root 447, a plea in abatement to a writ of foreign attachment upon the ground that both the plaintiff and the defendant were inhabitants of another state was held insufficient. In short, the very purpose of allowing the attachment of the defendant's estate in the original process of the action was to prevent just the situation that exists in the case at bar.

The use of the word "estate" in the attachment

statute was by design. The apparent legislative intent was to employ a word all inclusive in its meaning. In the case of *Smith* v. *Gilbert,* 71 Conn. 149, 154, 41 A. 284, the court considered the history of our legislation relating to attachment. The early statute of 1650 subjected "goods" and "Lands" to attachment. 1 Col. Rec. 511 (1636-1665). One hundred years later, in 1750, the statute states that "the Goods or Chattles of the Defendant; and for want of them the Lands or Person," can be attached. Statutes, 1750, p. 3. By 1888 the wording had become "the estate of the defendant, both real and personal, and for want thereof against his body." Rev. 1888, § 893. In *Smith* v. *Gilbert,* supra, 154, we said: "In conformity with the settled policy of this State, that all the property of a debtor shall be holden for the payment of the debts of its owner, our courts have construed the language of these statutes as rendering liable to attachment certain legal and equitable interests in property, the absolute or legal title to which property is not in the debtor, but which interest is within his control and can be fairly appraised or sold." Again, at page 155, we say: "When an interest which may be strictly neither goods nor land is nevertheless clearly property, capable of being fairly sold and appraised, which is subject to the debtor's control, and which ought to be responsible for his debts, we say that the policy of the State for two hundred and fifty years clearly indicates that such interest is attachable property within the meaning of the statute." And again, on that same page: "The policy of the law justifies the extension of the right of attachment to property which, though not strictly within the letter, is within the equity of the statute." In short, the estate which is the subject of the attachment must be an interest which can be

reached by levy of execution. See *Humphrey* v. *Gerard,* 83 Conn. 346, 356, 77 A. 65.

True, the property in the present case was not within the debtor's control in the sense that Pearl Dantowitz or Rettner could secure a court order for conveyance of it to them. Nevertheless, if they could not reach it, their creditors could. To all practical purposes they still had control of it. The complaint alleges that the conveyance "was made for an inadequate consideration and was caused by the acts and instigation of . . . Rettner, acting for himself and purporting to act for . . . Pearl Dantowitz, and in collusion with the . . . defendant 170 Lawn Corporation." It also alleges that the defendant corporation, acting with Pearl Dantowitz and Rettner, was pursuing an attempt to hinder, delay and defraud the plaintiff as a creditor. All the persons involved in this allegedly fraudulent transfer are made parties: Pearl Dantowitz, Rettner, and the corporation. Then too, the interest of Pearl Dantowitz and Rettner can be reached by levy of execution, if not at the time the attachment was made, then certainly at the time an execution is issued, if the plaintiff recovers a judgment in this action. If the court can render a judgment for money damages under the first count of the complaint, it can also proceed against all of these defendants to probe the fraud and determine whether or not the conveyances were in fact fraudulent. The plea as to Pearl Dantowitz should be overruled.

The court also erred in sustaining the plea as to Rettner. It is not disputed that he came into the state voluntarily to attend a trial in the courts of this state as a witness. As such he was immune from service. *Ryan* v. *Ebecke,* 102 Conn. 12, 20, 128 A. 14. The complaint, however, alleges that at the time the

plaintiff was injured Rettner was an owner of the premises and that he caused Pearl Dantowitz to convey them to the corporation to defeat the plaintiff's claim. The sheriff's return shows that Rettner's interest was attached by direction of the plaintiff's attorney and that Rettner was served by order of notice, as Pearl Dantowitz was. Rettner's plea in abatement does not allege, nor has he attempted to show, that he has no attachable interest. He merely questions the personal service made upon him. While the ground given for sustaining the plea is valid, nevertheless, for the reasons hereinbefore stated, Rettner's interest in the premises was under attachment, and an order for service by registered mail was issued. Under these circumstances, the effect of the decision on the plea is merely to invalidate the personal service made upon Rettner.

There is error, the judgment is set aside and the case is remanded with direction to overrule the pleas in abatement.

In this opinion INGLIS, C. J., WYNNE and COVELLO, Js., concurred; O'SULLIVAN, J., concurred in the result.