TRAVELERS INDEMNITY COMPANY *v.* JOHN RUBIN ET AL.
(13207)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, JS.

Argued October 12—decision released December 27, 1988

*Robert C. Danaher,* for the appellant (plaintiff).

*Alexandra Davis,* with whom, on the brief, was *Richard S. Cramer,* for the appellees (defendants).

GLASS, J. The plaintiff, Travelers Indemnity Company, instituted this action to set aside a conveyance of real property owned by the defendant John Rubin[1] to the defendant Linda Paul. The trial court rendered judgment in favor of the defendants. We find no error in that portion of the judgment in favor of Paul; there is error in that portion of the judgment in favor of Rubin, and as to him the judgment is set aside and remanded to the trial court for further proceedings.

The facts may be summarized as follows. In 1975, the plaintiff provided Rubin with insurance coverage on the Hofbrau Restaurant, which Rubin owned. To collect under the policy, Rubin vandalized the restaurant on April 28, 1975, and submitted a claim, which the plaintiff paid. The plaintiff, however, discovered the fraud and brought suit against Rubin on July 30, 1980. On May 14, 1984, the plaintiff was awarded a judgment in the amount of $236,968.78 against Rubin. This action is based on the plaintiff's effort to satisfy this judgment.

The property that is the subject of this action is located on Birch Mountain Road in Manchester. In 1974, Rubin and his wife at the time, Joan, purchased the property and executed a first mortgage to the Savings Bank of Manchester. Thereafter, Rubin engaged in an elaborate series of transactions involving the property. On July 13, 1975, the Rubins gave a second mortgage to Northeast Financial Services, Inc., in exchange for a $10,000 loan. In that transaction, both parties were represented by Rubin's attorney, Jacob Sobotka.

---

[1] The record indicates that John Rubin died on December 23, 1987. Pursuant to General Statutes § 52-599 and Practice Book § 4033, the motion of the plaintiff to substitute attorney John W. Cooney, administrator of the estate of John Rubin, was granted on October 5, 1988. For clarity we will refer to the defendant John Rubin as Rubin.

Rubin also gave a third mortgage in the amount of $10,000 on the property to his mother, Rachel Green. The third mortgage was designed to act as a buffer between the second mortgage and encumbrances Rubin expected to be placed on the property. Rubin's creditors subsequently placed encumbrances on the property.

Upon their divorce in 1976, Rubin's wife Joan quitclaimed all her interest in the property to Rubin. Rubin met the defendant Paul in 1972. In 1975, they became romantically involved, and began living together the following year. The couple ultimately married in 1980. In 1977, a fire destroyed the house on the Birch Mountain Road property, and Rubin used the insurance proceeds to pay off the first mortgage. The second mortgage, held by Northeast Financial Services, Inc., was transferred to Mark and Bernice Sobotka, the parents of Rubin's attorney. The Sobotkas then instituted a foreclosure action. Their son engaged an appraiser and hired the law firm of Brody & Jump to handle the foreclosure. When the property was strictly foreclosed, attorney Sobotka directed transfer of title to Paul. On December 27, 1978, Paul executed a mortgage and note to Sobotka as trustee for the foreclosure debt. The house was later rebuilt and on December 19, 1979, Paul obtained a mortgage from Society for Savings in the amount of $35,000, from which attorney Sobotka was paid.

The plaintiff brought this action against Rubin and Paul on January 29, 1985, seeking to set aside the 1978 conveyance of the Birch Mountain Road property, and also seeking compensatory and punitive damages. The plaintiff alleged that Rubin had transferred the property to Paul through the 1978 foreclosure action with the intent of hindering collection of Rubin's anticipated liability arising out of the plaintiff's action, brought in 1980, to recover money paid on Rubin's fraudulent

claim under the policy covering his restaurant. The plaintiff also alleged that Paul knowingly participated in and conspired with Rubin in the foreclosure to avoid Rubin's debt.

At trial, Rubin was defaulted for failing to appear. Paul appeared, denying the allegations of the plaintiff's amended complaint, and asserted as a special defense General Statutes § 52-577,[2] which establishes a three year limitation period for tort actions. The trial court found that the plaintiff's action was barred by § 52-577, and rendered judgment for both defendants. From this judgment, the plaintiff has appealed, claiming that the trial court erred in: (1) holding that the suit brought by the plaintiff was barred by the three year statute of limitations for tort actions; and (2) rendering judgment for the defendant Rubin who was in default for failing to appear. We find error in part.

## I

The plaintiff claims that the trial court erred in holding that this action was barred by the three year statute of limitations for tort actions. Ordinarily, the fraudulent conveyance statute, General Statutes § 52-552,[3] would be the basis for an action to set aside a fraudulent conveyance of real property. A claimant, however, is not a creditor within the contemplation of § 52-552 until an unliquidated claim for damages in tort has been liquidated by a judgment. *Murphy* v. *Dantowitz*, 142

---

[2] "[General Statutes] Sec. 52-577. ACTION FOUNDED UPON A TORT. No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[3] "[General Statutes] Sec. 52-552. FRAUDULENT CONVEYANCES, JUDGMENTS, CONTRACTS, WHEN VOID. All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs."

Conn. 320, 324, 114 A.2d 194 (1955). Moreover, the plaintiff concedes that its action is a common law action and therefore does not implicate § 52-552.

In addressing the scope of § 52-577, we have stated that "[t]he three-year limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in § 52-584 or another section. *Tuohey* v. *Martinjak,* 119 Conn. 500, 506, 177 A. 721 [1935]." *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 491, 234 A.2d 825 (1967). Thus, the three year limitation period of § 52-577 applies to all actions based on a tort unless there has been a specific statutory exclusion. The common law tort action to set aside a fraudulent conveyance of real property has not been statutorily excluded from § 52-577, and we are unpersuaded that we should exclude such actions by judicial fiat.

The plaintiff claims, however, that even if the three year period of limitation in § 52-577 applies to a common law tort action to set aside a fraudulent conveyance, the period did not begin to run until the plaintiff received a judgment on its underlying tort claim. The gist of the plaintiff's argument is that although the Hofbrau Restaurant was vandalized on April 28, 1975, and the plaintiff commenced its action to recover for the fraud on July 30, 1980, the plaintiff did not receive judgment against Rubin until May 14, 1984. Because the present action was instituted on January 29, 1985, the plaintiff avers that it is well within three years of the judgment against Rubin, and, therefore, is not barred by § 52-577. In support of this claim, the plaintiff relies on two Superior Court cases.[4] We find neither case persuasive.

---

[4] The Superior Court cases mainly relied upon by the plaintiff are *Carey* v. *Forlivio,* 32 Conn. Sup. 7, 336 A.2d 587 (1974), and *Einbinder & Young, P.C.* v. *Soiltesting, Inc.,* 36 Conn. Sup. 277, 418 A.2d 95 (1980). Since these

In *Murphy* v. *Dantowitz,* supra, we recognized that an underlying tort action for damages could be joined in a single complaint with a claim that a fraudulent conveyance made to defeat a debt be set aside. We stated: "Upon common-law principles . . . one who at the time a transfer of property is made has a right to recover damages in tort may avoid the transfer as fraudulent if the transfer is made for the purpose of defeating his right. *White* v. *Amenta,* 110 Conn. 314, 318, 148 A. 345 [1930]. The plaintiff, under circumstances such as those alleged in the complaint in this case, could incorporate in a single complaint a claim for damages in tort and a petition that a fraudulent conveyance made to defeat her claim be set aside. . . . See *Burakowski* v. *Grustas,* [134 Conn. 205, 208, 56 A.2d 461 (1947)]; *Norwalk Shores Realty Co.* v. *Clark,* 126 Conn. 688, 691, 14 A.2d 34 [1940]; *Boiselle* v. *Rogoff,* 126 Conn. 635, 13 A.2d 753 [1940]; *Fine* v. *Moomjian,* 114 Conn. 226, 228, 158 A. 241 [1932]." *Murphy* v. *Dantowitz,* supra, 324–25.

The plaintiff argues that the joinder of the two actions is permissive and not mandatory. We are not persuaded, however, that a potential judgment creditor

cases were not appealed, we make only the following observations. *Einbinder & Young, P.C.* v. *Soiltesting, Inc.,* supra, 279, involved an action based on General Statutes § 52-552 and therefore is inapposite. In *Carey,* although a common law tort case, it appears that the statutorily based creditor rule was applied to support the conclusion that the tort statute of limitations was not applicable to the case. The trial court stated: "Can a Statute of Limitations run against a tort claimant's action to recover property fraudulently conveyed when the existence of a judgment which is sought to be protected by this action has not yet been established? This court thinks not. For this reason, it holds that where a plaintiff's right to recover property allegedly fraudulently conveyed rests initially on his recovery of a judgment, notwithstanding the fact that he may join both the main action and the action in fraudulent conveyance in the same complaint, no Statute of Limitations can begin to run against him until, at least, judgment is recovered." *Carey* v. *Forlivio,* supra, 10. We decline to comment on the disposition of this unappealed Superior Court case.

who is aware of a fraudulent conveyance should be allowed to toll the statute of limitations by ignoring the conveyance and to wait until the underlying claim is reduced to judgment to pursue the fraud feasor.[5] Cf. *Rosenberg* v. *Rosenberg,* 123 Ariz. 589, 592, 601 P.2d 589 (1979) (in action to set aside fraudulent conveyance of realty after wife obtained divorce settlement judgment, statute of limitations began to run when wife discovered fraud); *Greco* v. *Pullara,* 166 Colo. 465, 467, 444 P.2d 383 (1968) (when no actual notice prior to date plaintiff became judgment creditor, statute of limitations on judgment creditor's action began to run when creditor chargeable with knowledge of fraudulent conveyance); *Cowart* v. *Whitley,* 39 N.C. App. 662, 664, 251 S.E.2d 627 (1979) (where plaintiff obtained judgment in 1973 and sued to set aside prior conveyance in 1976, issue was whether plaintiff knew of conveyance prior to 1973 action). Where the claimant is aware of the fraudulent conveyance, he may not treat the joinder of the two actions as optional if failure to join the actions would result in expiration of the limitations period applicable to the conveyance.

In the present case, the trial court found that the plaintiff knew that the property had been foreclosed in 1978 when it instituted the action to recover damages from Rubin for the insurance policy fraud on July 30, 1980. The plaintiff had known of Rubin's residence on Birch Mountain Road since 1975. When the plaintiff discovered in September, 1979, that Rubin's claim under the restaurant policy was fraudulent, it also became aware that the Birch Mountain Road property owned by Rubin had been foreclosed in 1978. It also became aware that Rubin was living on the same premises in 1980.

---

[5] This case does not involve a plaintiff who was unaware of the fraudulent conveyance at the time the tort action was instituted. We therefore do not address the statute of limitations issue with respect to that circumstance.

We can discern no rational reason why a party knowing of a debtor's fraudulent conveyance should not be required to join an action to set aside the fraudulent conveyance with the underlying action against the debtor for damages. Knowledge of the fraud should facilitate the prompt resolution of claims against real property. A claim of fraudulent conveyance should not be like the sword of Damocles hanging over a title to real property to be dropped at the pleasure of the claimant. The trial court properly considered the plaintiff's knowledge of the fraudulent conveyance in determining that the statute of limitations barred its action.[6]

## II

The plaintiff also claims that the trial court erred in rendering judgment in favor of Rubin after he had been defaulted. The plaintiff brought the action against Rubin and Paul by serving on each a summons and complaint dated January 29, 1985, and a subsequent amended complaint dated March 7, 1985. Rubin neither appeared nor answered the complaint. Upon the plaintiff's motion, the trial court entered a default in favor of it against Rubin on May 6, 1985. A notice of default was filed on May 17, 1985. At the trial, Rubin did appear as a witness. After the trial, the court rendered judgment for Paul and Rubin on May 1, 1987. The plaintiff argues that the judgment rendered in favor of the defaulted Rubin was in error. We agree.

---

[6] The plaintiff also argues that the equities of this case do not favor barring this action. The plaintiff cites *Price* v. *Hawley,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 318033 (April 27, 1987), which involved the enforcement of a foreign judgment in Connecticut. In that case, the only issue was whether the three year statute of limitations began to run from the date of the rendition of the foreign judgment, or from the date that the judgment was recorded in Connecticut. The court concluded that the statute began to run from the date the judgment was recorded in Connecticut. Again, we decline to comment on the disposition of an unappealed Superior Court case.

Since Rubin never appeared as a party at trial, there was no basis for the trial court to render judgment in his favor. "A default in an action for legal and equitable relief admits the material facts constituting a cause of action. *Cardona* v. *Valentin,* 160 Conn. 18, 26, 273 A.2d 697 (1970); *New York, N.H. & H. R. Co.* v. *Hungerford,* 75 Conn. 76, 78, 52 A. 487 (1902); *Starr Cash & Package Car Co.* v. *Starr,* 69 Conn. 440, 446, 37 A. 1057 (1897)." *Kloter* v. *Carabetta Enterprises, Inc.,* 186 Conn. 460, 464, 442 A.2d 63 (1982).[7]

"Where the trial court wishes to raise a statute of limitations issue which has not been raised by the parties, the question becomes whether the limitation is considered procedural or jurisdictional. See *L. G. DeFelice & Son, Inc.* v. *Wethersfield,* 167 Conn. 509, 513, 356 A.2d 144 (1975); *Hillier* v. *East Hartford,* 167 Conn. 100, 355 A.2d 1 (1974); *Diamond National Corporation* v. *Dwelle,* 164 Conn. 540, 325 A.2d 259 (1973). The general rule is that where the right of action exists independently of the statute in which the limitation is

---

[7] "Upon default, the plaintiff ordinarily becomes entitled to recover nominal damages. *Cardona* v. *Valentin,* [160 Conn. 18, 26, 273 A.2d 697 (1970)]; *Batchelder* v. *Bartholomew,* 44 Conn. 494, 501–502 (1877). The right to further substantial damages remains to be established by the plaintiff at a hearing in damages. *New York, N.H. & H. R. Co.* v. *Hungerford,* [75 Conn. 76, 78, 52 A. 487 (1902)].

"After a default, a defendant may still contest liability at a hearing in damages, provided that he has given notice to the plaintiff of his intention to do so. Practice Book § 367; *DeBlasio* v. *Aetna Life & Casualty Co.,* 186 Conn. 398, 401, 441 A.2d 838 (1982); *Morris* v. *Winchester Repeating Arms Co.,* 73 Conn. 680, 684, 49 A. 180 (1901); *Ockershausen* v. *New York, N.H. & H. R. Co.,* 71 Conn. 617, 621, 42 A. 650 (1899)." *Kloter* v. *Carabetta Enterprises, Inc.,* 186 Conn. 460, 464, 442 A.2d 63 (1982). "At such a proceeding the burden of proof is on the defendant to disprove those allegations of the complaint which he contests. *Hourigan* v. *Norwich,* 77 Conn. 358, 367–68, 59 A. 487 (1904). If the defendant simply claims that he is not liable, he assumes the burden of proving that fact. *Bernhard* v. *Curtis,* 75 Conn. 476, 481, 54 A. 213 (1903). If the defendant sustains his burden, the plaintiff is entitled to nominal damages only. *Cardona* v. *Valentin,* supra, 26." *DeBlasio* v. *Aetna Life & Casualty Co.,* supra, 401–402.

found, such a statutory bar is considered personal and procedural, and it is deemed waived unless it is specially pleaded. See Practice Book §§ 164, 109A; *L. G. DeFelice & Son, Inc.* v. *Wethersfield,* supra, 511. . . . [T]he limitation acts as a bar to a remedy otherwise available. Id. In these instances, a trial court may not raise the limitation on its own motion. Where, however, a specific limitation is contained in the statute which establishes the remedy, the remedy exists only during the prescribed period and not thereafter. In this situation, the court may properly raise the statue of limitations issue on its own motion because it is considered substantive or jurisdictional, and not subject to waiver. See Practice Book § 145; *L. G. DeFelice & Son, Inc.* v. *Wethersfield,* supra." *Orticelli* v. *Powers,* 197 Conn. 9, 15, 495 A.2d 1023 (1985).

In the present case, the plaintiff's fraudulent conveyance action existed independently of the limitation period of § 52-577. As a consequence, the trial court should not have raised the limitation on its own motion. Because Rubin did not challenge the pleadings or the evidence presented by the plaintiff, the trial court erred in rendering judgment for him.

There is no error in the plaintiff's appeal from the portion of the judgment rendered in favor of Paul, there is error in the plaintiff's appeal from the judgment rendered in favor of Rubin, that portion of the judgment is set aside and the case is remanded to the trial court for further proceedings.

In this opinion, PETERS, C. J., and HULL, J., concurred.

COVELLO, J., with whom CALLAHAN, J., joins, dissenting. The majority has overlooked the fact that an application to set aside a fraudulent conveyance is an equitable cause of action and has, therefore, errone-

ously applied the three year limitation on actions founded upon a tort. This was not an action founded upon a tort.

The cause of action set forth in the plaintiff's complaint is identical to the creditors' bill in equity which existed in those jurisdictions where law and equity were administered by separate tribunals. *Vail* v. *Hammond,* 60 Conn. 374, 383, 22 A. 954 (1891). The plaintiff's amended complaint alleged that it had obtained a judgment against Rubin and that Rubin had fraudulently transferred the property in question to avoid the debt due the plaintiff. The plaintiff sought by way of relief that the conveyance be set aside.[1]

" '[I]n this State, where the same court administers both law and equity, and where legal and equitable

[1] The amended complaint read as follows: "(1) At all times hereinafter mentioned, the defendant, John Rubin hereinafter referred to as the defendant owner, was indebted to the plaintiff in the sum of $236,968.78, now formalized in a judgment entered in the Superior Court for the Judicial District of Hartford on May 14, 1984.

(2) On or about June 7, 1978, the defendant owner, John Rubin allowed to be transferred to Linda Paul, the defendant transferee, his wife, through a foreclosure action, certain property located at 329 Birch Mountain Road, Manchester, Connecticut with the intent of avoiding the plaintiff's debt or of hindering its collection. Said foreclosure action was arranged for and manipulated by the defendant owner or his agents for the purpose of removing encumbrances from the property and avoiding the debt to this plaintiff.

(3) The defendant transferee knew that the defendant owner was indebted to the plaintiff, and in accepting the conveyance knowingly aided, abetted and conspired with the defendant owner for the purpose and intent aforesaid.

(4) The conveyance deprived the defendant owner of sufficient means to satisfy his indebtedness to plaintiff.

WHEREFORE, the plaintiff claims:

(a) damages;

(b) that the conveyance be set aside and be declared null and void as to the plaintiff; and

(c) punitive damages and the cost of this action."

The claims for damages are surplusage as that matter had already been determined in the earlier Superior Court action.

remedies can be granted in the same action, a creditor can in the same complaint have judgment for his debt and also the necessary *equitable aid to obtain payment out of any property of the debtor which the law court could not reach.' Huntington* v. *Jones,* 72 Conn. 45, 49, 43 Atl. 564 [1899] . . . ." (Emphasis added.) *Finance Corporation of New England, Inc.* v. *Scard,* 100 Conn. 712, 716–17, 124 A. 715 (1924).

"A judgment creditor who complains that his debtor has transferred all his property, when insolvent, to his wife, by a voluntary and fraudulent conveyance, and that she participated in the fraud, has, among other remedies, one at law for compensation damages against both the wrong-doers; *and one in equity to have the fraudulent conveyance set aside.*" (Emphasis added.) *Nowsky* v. *Siedlecki,* 83 Conn. 109, 112, 75 A. 135 (1910).

In adopting the three year tort statute of limitations, the majority refers to our holdings in *Murphy* v. *Dantowitz,* 142 Conn. 320, 114 A.2d 194 (1955), and *White* v. *Amenta,* 110 Conn. 314, 148 A. 345 (1930). Both *Murphy* and *Amenta* dealt with the question of whether tort causes of action not yet reduced to judgment could be combined with equitable actions which sought to set aside fraudulent conveyances.[2] In each instance we held that it was possible to combine both the tort and equitable causes of action even though the tort claims were just that (i.e., claims) and had not yet been reduced to judgment. This, however, is not the situation in the present case. The plaintiff here had already reduced its cause of action to judgment and was

---

[2] In *Murphy* v. *Dantowitz,* 142 Conn. 320, 114 A.2d 194 (1955), the plaintiff sought to recover for personal injuries sustained as the result of the defendants' alleged negligence in maintaining a defective condition in a tenement house. In *White* v. *Amenta,* 110 Conn. 314, 148 A.2d 345 (1930), both the plaintiff and the defendant claimed their entitlement to damages as the result of the other's negligence in connection with an automobile collision.

calling solely on the court's equitable powers to set aside the alleged fraudulent conveyance. Since this was purely an application to the court to use its equitable powers, no statute of limitations is applicable.

If the defendants claimed that the passage of time, for whatever the reason, should bar the plaintiff's claim for equitable relief, the appropriate analysis should have considered whether the plaintiff's claim was barred by the doctrine of laches, i.e., "an inexcusable delay in asserting a right . . . [so as] to prejudice him against whom the claim is made"; *Kiley* v. *Doran,* 105 Conn. 218, 228, 134 A. 792 (1926); or through application of the doctrine of equitable estoppel. "The office of an equitable estoppel is 'to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties.' *Canfield* v. *Gregory,* 66 Conn. 9, 17, 33 Atl. 536 [1895]." *Newfield Building Co.* v. *Mohican Co.,* 105 Conn. 488, 500, 136 A. 78 (1927).

The trial court concluded that Rubin wanted "to protect his equity in the property and to exclude his creditors who might be subsequent encumbrancers by having a strict foreclosure that would necessarily include present and future creditors." The trial court further concluded that Paul "would have had to place her head in the sand to be unaware of the events coming to pass in 1977 and 1978 . . . ."

Despite Paul's participation in a gross fraud, the trial court allowed her and thereby her husband, Rubin, to keep their ill gotten gains based upon the fact that the plaintiff: (1) knew the location of Rubin's residence since 1975; (2) knew of the foreclosure of the Birch Mountain Road premises in 1978; and (3) knew that Rubin was living on these premises in 1980.

The trial court, however, made no findings as to the plaintiff's knowledge of the $10,000 mortgage without

consideration to Rubin's mother, the assignment of the second mortgage to the parents of Rubin's attorney, the redemption by Paul at the foreclosure sale in consideration of nothing more than a promissory note, and most critically, the fact that there was a personal relationship between Rubin and Paul. These facts were the heart of the fraud. Had the totality of these circumstances been exposed, as they should have been, to a laches or equitable estoppel analysis, the plaintiff's claim would not be barred and the obviously inequitable result that has been reached here surely could have been avoided.