[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AFTER HEARING IN DAMAGES
This matter came before the court upon special assignment for a hearing in damages. Through the complaint dated June 7, 1999, the plaintiff commissioner for the Connecticut Department of Environmental Protection (DEP) brought an action for civil penalties and injunctive relief; alleging that persistent violations of hazardous waste legislation and applicable regulations had occurred at the used oil retailing facility which had been operated by the defendants near the Connecticut River in Glastonbury, Connecticut. CT Page 14043
The complaint alleges that the defendants Devon Oil Energy Corporation (Devon Oil) and Maurice Lafreniere were responsible for the operation of this facility, and that they had violated General Statues § 22a-454, which establishes the manner in which hazardous wastes are permitted to be collected, stored, treated, removed or disposed of in this state. The complaint also alleges that the defendants had violated various provisions of §§ 22a-449(c)-100 through 110 of the Regulations of Connecticut State Agencies, which further address the hazardous waste issues contemplated by § 22a-454. Specifically, the DEP alleges that the defendants sold waste oil contaminated with hazardous waste to third parties who were not allowed to burn such waste fuel. The DEP also alleges that the defendants failed to comply with Land Disposal Restrictions, in violation of § 22a-449(c)-108 (a)(1) of the Regulations of Connecticut State Agencies, by receiving and storing hazardous waste fuel, commingling hazardous waste fuel with other used oil, and by reselling the used oil. The defendants also were alleged to have disposed of or abandoned 9, 450 gallons of contaminated used oil, in violation of § 22a-449(c)-105 (a)(1) and § 22a-449(c)-102 (a) (1) of the Regulations of Connecticut State Agencies. The defendants were further alleged to have failed to properly and effectively train employees for operation of their treatment, storage and disposal facility.
In addition, the DEP alleges that the defendants violated a number of filing and technical requirements in operating their facility. First, the DEP alleges that the defendants did not submit the filings requisite to obtaining a permit to receive and store used oil; that they failed obtain an identification number from the United States Environmental Protection Agency; and that they failed to document whether they maintained liability insurance and/or bonding for accidents. Second, the DEP alleges that the defendants did not keep proper records, in that they failed to submit adequate waste reports for used oil pursuant to § 22a-449(c)-105
(a)(1) of the Regulations of Connecticut State Agencies; failed to prepare a facility inspection schedule and log representing regularly performed inspections of the facility; failed to prepare records pertaining to the types and locations of waste pursuant to §22a-449(c)-105 (a)(1) of the Regulations of Connecticut State Agencies; and failed to document whether the Devon Oil facility was in compliance with hazardous waste tank requirements regarding storage tanks. Finally, the DEP alleges that the defendants did not prepare a facility waste analysis plan, a closure plan and/or cost estimates, and a hazardous waste contingency plan pursuant to § 22a-449(c)-105 (a)(1) of the Regulations of Connecticut State Agencies.
At the hearing of this matter, the plaintiff presented a sole witness, CT Page 14044 Ross Bunnell, who explicated the basis for the DEP's damage assessment and whose testimony supported the DEP's claim for civil penalties. Neither defendant appeared at the hearing in damages or presented any evidence in opposition to the plaintiffs claims. The DEP has provided a thorough and detailed memorandum of law in support of its action: the defendants submitted no written argument for the court to consider.
 I. EFFECT OF THE DEFAULT OF MAY 18, 2000
On May 18, 2000, a finding of default was entered against each defendant, due to their failure to appear for a conference pretrial scheduled on May 17, 2000. (Berger, J.) See Practice Book § 17-19.[1]
Thereafter, the matter was assigned for a hearing in damages, through which the DEP was entitled to present evidence in support of its claims for the imposition of civil penalties. The defaults were never opened, and "the defendants did not provide written notice of their intent to contradict the allegations in the complaint. . . . In the absence of such notice, "[a] default in an action for legal and equitable relief admits the material facts constituting a cause of action.' (Internal quotation marks omitted.) Travelers Indemnity Co. v. Rubin, 209 Conn. 437, 445,551 A.2d 1220 (1988)." Steiger v. J S. Builders, Inc., 39 Conn. App. 32,36 n. 3, 663 A.2d 432 (1995) (construing Practice Book § 367, the predecessor to the applicable Practice Book § 17-34).[2]
It is axiomatic that "[a] default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant.Ratner v. Willametz, 9 Conn. App. 565, 579, 520 A.2d 621 (1987). . . .Skyler Ltd. Partnership v. S.P. Douthett Co., 18 Conn. App. 245, 253,557 A.2d 927 [cert. denied, 212 Conn. 802, 560 A.2d 984] (1989). . . .Voluntown v. Rytman, 27 Conn. App. 549, 557, 607 A.2d 896, cert. denied,223 Conn. 913, 614 A.2d 831 (1992)." (Internal quotation marks omitted.)Bank of America, FSB v. Franco, 57 Conn. App. 688, 693, ___ A.2d ___ (2000). "Where there is a default judgment and nothing more, the cause of action and every element necessary to establish it are admitted, and all that remains is to fix the amount of damages." Kiessling v. Kiessling,134 Conn. 564, 568, 59 A.2d 532 (1948).
The legal effect of an entry of default in this case is thus the admission of the facts alleged in the DEP's complaint, a finding of liability in favor of the plaintiff; and a judgment for civil penalties, if they are found to be appropriate under the existing circumstances. Applying this statute the present case, the default is the equivalent of an admission of a violation of the and regulations referenced in the complaint.[3] Accordingly, in hearing this matter, the court acknowledged that liability had been established in favor of the CT Page 14045 plaintiff; and thus limited its attention to the subject of the amount, if any, of civil penalties that should be awarded.[4] See, e.g., Boyce v.Donahue, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 171017 (February 28, 2000, Karazin, J.).
 II. ELIGIBILITY FOR CIVIL PENALTIES
As discussed above, the defendants' liability for the statutory and regulatory violations set forth in the plaintiffs complaint has been established by the entry of the default. In determining whether a penalty is due to the plaintiff and, if so, what type and extent of penalty should be imposed, the court must consider the evidence related to the violations thus established.
The court finds its authority to impose civil penalties in this matter within the text of General Statutes § 22a-131. This legislation provides, in pertinent part, that "[a]y person who violates any provision of the state's hazardous waste program shall be assessed a civil penalty of not more than twenty-five thousand dollars for each day such violation continues. The Attorney General, upon complaint of the commissioner [of environmental protection], shall institute a civil action to recover such penalty." (Emphasis added.) General Statutes § 22a-438 (a) further authorizes civil penalties to be imposed upon an individual who violates environmental protection legislation, providing that "[a]ny person who . . . violates any provision of this chapter . . . shall be assessed a civil penalty not to exceed twenty-five thousand dollars, to be fixed by the court, for each offense. Each violation shall be a separate and distinct offense and, in case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense. The Attorney General, upon complaint of the commissioner, shall institute a civil action in the superior court for the judicial district of Hartford to recover such penalty. In determining the amount of any penalty assessed under this subsection, the court may consider the nature, circumstances, extent and gravity of the violation, the person[`s] . . . prior history of violations, the economic benefit resulting to the person . . . from the violation, and such other factors deemed appropriate by the court. The court shall consider the status of a person . . . as a persistent violator." (Emphasis added.)
Generally, penalties are designed to discourage violators from continuing or repeating violations and to dissuade others from violating the law. Student Public Interest Research Group of New Jersey, Inc.v. ATT Bell Laboratories, 617 F. Sup. 1190, 1201 (D.N.J. 1985). For purposes of calculating civil penalties, other courts have followed the well-reasoned algorithm that directs the tribunal to first determine the maximum penalty to be assessed, then to adjust that figure based upon the CT Page 14046 factors applicable to a particular case. Atlantic States LegalFederation, Inc. v. Tyson Foods, Inc., 897 F.2d 1128, 1137, 1142 (11th Cir. 1990). See also PIRG v. Powell Duifryn Terminals, Inc.,720 F. Sup. 1158, 1163-64 (D.N.J. 1989), rev'd on other grounds,913 F.2d 64 (3rd Cir. 1990); United States v. SCM Corp., 667 F. Sup. 1110,1126 (D.Md. 1987); Chesapeake Bay Foundation v. Gwaltney of SmithfieldLtd., 611 F. Sup. 1542, 1556 (E.D.Va. 1985); affd., 791 F.2d 304 (4th Cir. 1986), vacated on other grounds, 484 U.S. 49, aff'd and remanded in part on other grounds, 844 F.2d 170 (4th Cir. 1988); and California v.City and County of San Francisco, 94 Cal.App.3d 522, 530,156 Cal.Rptr. 542, 546-47 (1979). This court has adopted that meritorious step-by-step procedure in deciding the penalty aspect of this case.
Where a court is charged with the responsibility for assessment of penalties in a case involving environmental violations, it is appropriate to attempt to satisfy two policy goals: (1) deterrence and (2) fair and equitable treatment of the regulated community.[5] Chesapeake BayFoundation v. Gwaltney of Smithfield, Ltd., supra, 611 F. Sup. 1557; see also Carothers v. Capozziello, 215 Conn. 82, 103, 574 A.2d 1268 (1990). The former goal serves a primary policy consideration of the statutes enacted to regulate and thereby preserve the safety and security of our environment. See Chesapeake Bay Foundation v. Gwaltney of Smithfield,Ltd., supra. Civil penalties are acknowledged to achieve environmental compliance by deterring and discouraging future violations.[6] PIRG v.Powell Duffryn Terminals, Inc., supra, 720 F. Sup. 1166. The latter consideration, focusing upon fairness, is necessarily entwined with the first, and acts to adjust the deterrence figure by attempting to account for such factors as the violator's degree of willfulness, good faith, ability to pay, degree of cooperation with the regulators, and other factors specific to the violation or the case. Id.
The Connecticut Supreme Court has set forth general factors for a trial court to consider in a case based upon violations of environmental statutes and regulations, when determining what civil penalty is appropriate under the applicable scheme for protection of Connecticut's environment.[7] "Those factors include, but are not limited to: (1) the size of the business involved; (2) the effect of the penalty or injunctive relief on its ability to continue operation; (3) the gravity of the violation; (4) the good faith efforts made by the business to comply with applicable statutory requirements; (5) any economic benefit gained by the violations; (6) deterrence of future violations; and (7) the fair and equitable treatment of the regulated community." Carothersv. Capozziello, supra, 215 Conn. 103-04 (violation of environmental legislation regulating solid waste disposal). Thus, despite the mandatory language of the legislation, noted above, an appropriate penalty assessment is accomplished through the informed discretion of the court CT Page 14047 using the factors set forth in Carothers v. Capozziello, supra.
As noted, both § 22a-438 (a) and § 22a-131 mandate civil penalties in response to the defendants' liability in this matter by expressly establishing that a penalty shall be assessed for environmental violations. Section 22a-131 does not specify those factors which the court should consider in assessing that penalty. In the absence of specified criteria, this court will adopt and apply the analysis set forth in Carothers v. Capozziello, supra. Section 22a-438 (a), on the other hand, identifies a number of factors which the court may consider in assessing a penalty. The court is permitted, under that statute, to "consider the nature, circumstances, extent and gravity of the violation, the person or municipality's prior history of violations, the economic benefit resulting to the person or municipality from the violation, and such other factors deemed appropriate by the court." § 22a-438 (a). While some of the § 22a-438 (a) criteria overlap with those specified in Capozziello, the sections final reference to "other factors" enables the court to consider the Capozziello factorsnot already included in the statute, and the court will, accordingly, do so.
Having identified the factors to be used in assessing civil penalties, this court must now apply those factors to the evidence produced by the State. Evidence of the gravity of the defendants' non-compliance with the statutes and regulations at issue, and the lack, by both defendants, of good faith efforts to comply with applicable statutory and regulatory requirements, were placed before the court through the testimony of the state's expert witness, Ross Bunnell. Bunnell, an employee of the DEP's Bureau of Waste Management, was trained and experienced in dealing with issues related to hazardous waste disposal, regulatory enforcement and other matters within the purview of § 22a-454. The court finds that Bunnell had special skill and knowledge directly applicable to the matters at issue in this case, that his skill or knowledge is not common to the average person, and that his testimony would be helpful to the court in considering the issues. This court finds that because of his background and the subject matter of his testimony, Bunnell was properly qualified as an expert.[8] See Card v. State, 57 Conn. App. 134, 138,747 A.2d 32 (2000). Bunnell credibly testified in support of the fourteen allegations of acts or omissions on the part of the defendants, as the plaintiff had set them forth in subparagraphs 9.a. through 9.n. of the complaint.[9] From this expert testimony, the court concludes that in addition to obtaining the benefit of the default entered on May 18, 2000, the plaintiff has met its burden of proof as to each allegation of the complaint related to the nature and extent of the defendant's violations, by a preponderance of the evidence submitted. CT Page 14048
Bunnell's testimony provided an impressive foundation for the court's conclusion that the defendant's violations at the Glastonbury site were grave and serious, indeed, within the meaning of the Capozziello analysis described above, and as contemplated by § 22a-438 (a). Bunnell established that during the period in question, from approximately June 1, 1994 through February 14, 1995, the defendant LaFreniere, acting as the authorized representative of Devon Oil, controlled the day-to-day functions of the Devon Oil enterprise. DEP investigations of the Glastonbury site in August of 1994 revealed that the used oil, which was stored and resold by Devon Oil, was contaminated with hazardous waste. This contaminated waste oil was sold by the defendants to retail customers who were neither technically equipped nor legally permitted to burn or otherwise utilize that type hazardous material. As Bunnell explained, the unregulated burning of contaminated waste oil by Devon Oil's customers, without the proper equipment, would cause serious, albeit unmeasured, harm to the public and the environment through the resulting discharge of hazardous waste materials into the atmosphere. These violations persisted for a period of eight or nine months, all to the potential detriment of members of the public, whom the environmental regulations were designed to protect.
As to the extent of the violations, within the meaning of § 22a-438
(a), the court finds that Bunnell's credible testimony confirms the defendants' effective admission that while the Devon Oil facility ceased its operation at some time after February 14, 1995, a significant amount, 9, 450 gallons, of contaminated used oil was abandoned at the Glastonbury site, left in an storage tank of undetermined integrity.[10]
As to the economic benefit factor contemplated by Capozziello and § 22a-438 (a), Bunnell's uncontroverted testimony complimented the financial benefit calculation for each separate violation, which the DEP had submitted to the court as Plaintiffs Exhibit 1. This exhibit effectively demonstrated the financial motive for those who, like the defendants, were enabled to profit by ignoring or neglecting to comply with Connecticut's environmental protection laws, rather than engaging in the expense and commitment of compliance with these provisions. The exhibit dealt only with violations prior to the decontamination and clean-up of the hazardous waste products upon this property, which occurred in 1998.[11] Accordingly, the exhibit provided a compelling and effective analysis of the probable amounts saved by the defendants through their non-compliance with each of the fourteen obligations which formed the basis for the DEP's allegations against them. These savings were substantial, and all to the detriment of the public, the anticipated beneficiary of the defendants' expected compliance.
Capozziello directs the court to consider, as well, the size of the CT Page 14049 defendants' business and the effect of a penalty on the business's ability to continue operation. At present, neither defendant is engaged in the continuing operation of the business formerly known as Devon Oil 
Energy Corporation: as noted, the business and the site of operation-were abandoned by LaFreniere and the corporate defendant in 1995. Under these circumstances, the imposition of a civil penalty would have no valid effect on the ability of the defunct business involved to continue operation, or upon the business's ability to continue to employ LaFreniere as its operating officer.
It may be suggested that given the discontinuation of Devon Oil's operation, a penalty for the defendants' past violations should be imposed only if they are able to honor such a court order. The burden of establishing the inability to pay a penalty, because of discontinued operations, however, lies with the defendants, and this burden has not been fulfilled. As our Supreme Court has opined that "the trial court may place the burden of establishing mitigating financial circumstances" on the party subject to an order of damages, it is reasonable to place the burden of showing inability to pay civil penalties upon the defendant, as well.[12] See Keeney v. LS Construction, 226 Conn. 205, 217,626 A.2d 1299 (1993). Applying this rubric to the instant matter, the court concludes that it received insufficient evidence from which it could reasonably determine that either defendant was unable to pay any penalties which might be imposed upon them.
In determining the amount of penalty to be awarded, the court notes that, historically, substantial civil assessments have been levied against defendants who have been found liable for environmental violation. The imposition of such substantial civil penalties is consistent with the afore-mentioned dual goals of deterrence, and fair and equitable treatment of the regulated community. See Chesapeake BayFoundation v. Gwaltney of Smithfield, Ltd., supra, 611 F. Sup. 1557;Carothers v. Capozziello, supra, 215 Conn. 103. In Capozziello, for instance, the Supreme Court upheld the assessment of a $750,000 civil penalty for violations of the administrative orders at issue. Carothersv. Capozziello, supra, 215 Conn. 105.[13] In Keeney v. LSConstruction, supra, 226 Conn. 208-10, in addition to affirming an injunction requiring removal of material which had been disposed of without a permit, the court upheld the civil penalty which had been imposed upon the defendants after trial, jointly and severally, in the amount of $1,032,800, utilizing the factors set forth in Capozziello. Id., 210, 214, 218. In Kenney v. Galluzzo; Superior Court, judicial district of Hartford at Hartford, Docket No. CV-94-0544168-S (May 15, 1997; M. Hennessey, J.) the defendant was ordered to pay a civil penalty to the State of Connecticut in the amount of $3,993,300 for violations of water pollution and other environmental control legislation.[14]
CT Page 14050
 III. CALCULATION OF CIVIL PENALTIES
The plaintiff seeks a similarly substantial civil penalty based upon the violations in the complaint, which were established, by the default and by the evidence presented at the hearing in damages. By default, the defendants have admitted that they were in violation of § 22a-454 and § 22a-449(c)-110 of the Regulations of Connecticut State Agencies from June 1, 1994, to February 14, 1995, a period of two hundred fifty-nine (259) days; the evidence submitted by the plaintiff yields the same conclusion. The maximum daily amount of the civil penalty for each day of non-compliance would be $25,000, pursuant to § 22a-131 or § 22a-438 (a). The total maximum penalty for the time period in question would thus be $6,475,000.
The total civil penalty therefore sought by the DEP is $800,192, to be assessed jointly and severally upon the defendants. At the hearing, the DEP explained that this figure was composed of two factors: a total of $257,692, or approximately $995 per day, representing the economic benefit factor; and a total of $542,500, or approximately $2095 per day, representing the gravity factor. Each factor was presented as addressing both the defendants' degree of violation and the potential for harm to the public.
The amount of penalty sought is found to be most modest under the circumstances, and eminently fair and reasonable, given the seriousness of some nine months of the defendants' active violations of hazardous waste regulations affecting the environment shared by the citizens of the state of Connecticut; the effects of their violations which lingered for many months afterwards, until the clean up procedures performed by third parties in 1998; and the economic benefit inured to the defendants by failing to comply with the regulations at issue. This penalty, representing a penalty of approximately $3090 per day, and being some $5,674,808 less than the statutory maximum, is found to appropriately meet the goals of deterrence, and fair and equitable treatment of the regulated community. Chesapeake Bay Foundation v. Gwaltney ofSmithfield, Ltd., supra, 611 F. Sup. 1557; Carothers v. Capozziello, supra, 215 Conn. 103.
 ORDER
WHEREFORE, based upon the foregoing law and the evidence presented at trial, having found that the defendants have admitted violations of General Statutes § 22a-454 and certain provisions of §§22a-449(c)-100 through 110 of the Regulations of Connecticut State Agenciesas noted, and that the DEP has provided sufficient evidence to CT Page 14051 support a civil penalty which is less than the maximum penalty, this court now orders that a civil penalty in the total amount of $800,192, shall be assessed against the defendants jointly and severally. No costs or expenses of the state are awarded against the defendant.
BY THE COURT,
N. Rubinow, Jr