GEORGE M. PAULK, TRUSTEE, *vs.* STEPHEN A. COOKE AND WIFE.

*C*, owning about $4,000 worth of real estate and about $10,000 worth of stock in a small trade and bills receivable, and owing about $8,000, purchased a farm for $5,500, on which he paid down $3,000, and had the title conveyed to his wife, his object being to secure the property to her in case of his insolvency, but with otherwise no fraudulent intent. He had previously received money belonging to her, at different times, amounting in all to about $750, and had intended to return it to her, but no separate account had been kept of it or note or memorandum given. It was however regarded by *C* as a consideration for the conveyance to her. Sixteen months afterward *C* went into insolvency, his debts at the time being over $11,000 and his assets about $3,500. The debts owed by him at the time of the conveyance had been paid, except one of $900; but he had never been out of debt, and several of his debts were owed to the same parties to whom he was previously indebted, and had been incurred in the usual course of his business. Upon a bill in equity brought by the trustee in insolvency against *C* and his wife, to compel the conveyance of the land to him for the benefit of the creditors, it was held—

1. That there was not such an indebtedness of *C* to his wife as would constitute a valuable consideration for the conveyance, without considering its inadequacy.

2. That the conveyance was to be regarded as a voluntary one, and so not good against existing creditors.

3. That it could be impeached by subsequent creditors, although there was no actual fraud, there being a continued unbroken indebtedness.

BILL IN EQUITY, to obtain the title to certain real estate, brought by the petitioner as trustee in insolvency of the estate of the respondent Stephen A. Cooke, the title being in his wife. The suit was brought in the Superior Court for Tolland County, and the following facts were found by a committee:

The respondent Stephen A. Cooke was, in the spring of 1870, a resident of Providence, Rhode Island, and was then the owner of certain real estate there situated, of the value of $3,850, above the incumbrances on it. He was then engaged in the boot and shoe business, and was at that time indebted, exclusive of the mortgage on his real estate, in the sum of $7,775; and his stock in trade, fixtures, and bills receivable, amounted to $9,850 as inventoried by him, which inventory was made in the usual course of business and at a fair valuation. He had no other property except some real estate of small value in the state of Michigan.

Cooke's credit was then good, principally on account of his being the owner of the real estate in Providence. In May, 1870, he sold this real estate, and with the avails purchased a farm in Tolland, in this state, of one Atkins, being the land in question.

A warrantee deed of this farm he had made by Atkins to Mrs. Cooke. He paid $5,500 for the farm. Of this, $3,000 was paid from the avails of the real estate in Providence, and $2,000 secured by a mortgage back remains unpaid. It did not appear how or when the remaining $500 was paid. None of the payments were made by Mrs. Cooke.

At the time of the purchase Cooke was indebted to James L. Jones, of Providence, in the sum of $2,000, and to Congdon & Aylesworth, in the sum of $250, and in other sums to other persons whose names are unknown.

Cooke has never since the above payments to Atkins been free from debt, but the indebtedness then existing has since been paid, excepting about $900, to his son, Stephen A. Cooke, Jr. Other debts have been contracted from time to time in the usual course of his business, with the parties above named, and with sundry other parties, whose names appear in the commissioners' report.

In the month of July, 1870, he engaged in the boot and shoe trade in the village of Rockville in this state, and ceased to do business in Providence. On the 1st of September, 1870, he removed his family to Tolland.

His credit, after removing to this state, remained as before.

Some of his creditors trusted him upon the belief that the real estate purchased in Tolland stood in his own name. This belief was induced by conversations with him at various times, in which he spoke of the property as his, but he did not at any time affirm positively that the farm was his own, and did not intend to deceive any of his creditors.

On the 5th of September, 1871, Cooke made an assignment of all his property for the benefit of his creditors, under the insolvent laws of this state, and the petitioner was appointed trustee of the estate. His liabilities amounted to $11,479.98, as allowed by the commissioners, and the trustee has realized from his assets about the sum of $3,500.

After the purchase of the farm, Cooke expended of his own funds, in necessary repairs upon the buildings, over $600.

The respondents were married in the year 1838, in the state of New York. At that time Mr. Cooke resided in the state of Michigan, and the respondents continued to reside there about eight years. During that time he received and used in his business money belonging to his wife, amounting to about $250. From Michigan they removed to Rhode Island. While residing there, about the year 1847, he received of her money the further sum of about $300, and afterwards about $200 more. For a long time prior to the purchase of the property in question, he intended that the money so received by him should at some time be restored to his wife; but no note or other obligation was given for the money, and no account or memorandum thereof was made by either party. There was no other consideration for the deed from Atkins to Mrs. Cooke, moving from her. The committee found that it was the intention of the parties to secure, in case of insolvency or other contingency, the property in question to the wife, in consideration of the money so advanced by her to him; and that otherwise there was no actual intent to cheat or defraud creditors.

The Superior Court accepted the report of the committee, and upon the facts so found reserved the case for the advice of this court.

*Marcy* and *G. W. West,* for the petitioner.

1. Upon the facts found the conveyance to Mrs. Cooke is to be regarded as fraudulent in fact; in which case it is of no importance that there was a valuable consideration.

2. But there was not a valuable consideration. .The money claimed to have been due to Mrs. Cooke was in law the money of Mr. Cooke, and was not kept separate from the rest of his property; and the property conveyed was of so much greater value than the amount claimed to have been due to her, that the consideration is to be regarded as merely colorable. 1 Story Eq. Jur., §§ 245, 246, 353; *Hinman* v. *Parkis,* 33 Conn., 188; *Steadman* v. *Wilber,* 7 R. Isl., 481.

3. Being a voluntary conveyance, and Mr. Cooke having been deeply indebted at the time, it is constructively fraudulent as against his creditors. 1 Swift Dig., 278; 1 Story Eq. Jur., §§ 355 to 370.

4. And subsequent creditors can impeach such a conveyance if they can show an indebtedness, existing at the time, that remains unpaid. *Pratt* v. *Curtis,* 6 Bankrupt Reg., 142; *Crossly* v. *Elworthy,* Law Reps., 12 Eq. Cas., 158. In this case an unpaid prior indebtedness of $900 is found. And where the insolvent pays the then existing indebtedness by obtaining new credits, it is, in contemplation of law, no payment, but a continuation of that indebtedness. *Savage* v. *Murphy,* 34 N. York, 508; *Antrim* v. *Kelly,* 4 Bankrupt Reg., 189.

*Perkins* and *Bill,* for the respondents.

1. The conveyance to the wife was valid even against existing creditors. Under all the circumstances of the case it was no more than a suitable provision for her, leaving more than enough to pay all existing debts. Am. Lead. Cas., 1; *Salmon* v. *Bennett,* 1 Conn., 525; *Abbe* v. *Newton,* 19 id., 20; *Freeman* v. *Burnham,* 36 id., 469. He had property worth $13,700, almost twice the amount of his debts, and he invested $3,000 in this farm. This is not an unreasonable amount in view of the decisions, and especially in view of the fact that he did in fact pay all his debts then

due in the regular course of business. Moreover, this conveyance was made upon a good consideration. The money received by the husband was in equity her money, because it was agreed by him that it should be so considered. *Woodworth* v. *Sweet*, 44 Barb., 268; *Gochenaur's Estate*, 23 Penn. S. R., 460; *Resor* v. *Resor*, 9 Ind., 347; *Barron* v. *Barron*, 24 Verm., 375; *Savage* v. *Benham*, 17 Ala., 119. If all existing creditors are paid, a conveyance will not be considered voluntary if there is a good consideration, though it is not equal to the value of the property conveyed.

2. It is well settled in this state, that a voluntary conveyance is valid as against subsequent creditors, unless it is made with an actual intent to defraud either existing or subsequent creditors. *Benton* v. *Jones*, 8 Conn., 186; *Converse* v. *Hartley*, 31 id., 372. The rule is the same elsewhere. The authorities to this effect are very numerous. This intent to defraud must be proved, and will not be implied or found by this court unless the committee finds it. *Dwight* v. *Brown*, 9 Conn., 91; *Weeden* v. *Haws*, 10 id., 54. Legal fraud may be implied from the facts found, but actual fraud will not be. The only finding of the committee on this point is that the parties intended by this arrangement to secure the property to the wife, in consideration of her advances, against insolvency. There is no fraud in this. Such an intent is inseparable from all provisions made by a man for his family. No case has held that such an intent makes a conveyance fraudulent either in law or in fact. Otherwise, there was no actual intent to defraud creditors. *Bullett* v. *Taylor*, 34 Miss., 708; *Winchester* v. *Charter*, 12 Allen, 606; *S. C.*, 102 Mass., 202; *Moritz* v. *Hoffman*, 35 Ills., 553; *Martin* v. *Olliver*, 9 Humph., 561.

FOSTER, J. Shall the title of the farm purchased by the defendant, Stephen A. Cooke, on the 14th of April, 1870, be allowed to remain in his wife, Lydia A. Cooke, the other defendant, to whom it was then conveyed, or shall it be transferred to the plaintiff, trustee in insolvency, to the end that it may be made available in payment of the debts of said Stephen A. Cooke? The Superior Court seeks the advice of this court in answering this question.

The plaintiff insists that as between husband and wife there was no sufficient consideration to uphold this conveyance, and that it cannot be supported on that ground.

The defendants were married in 1838, and resided in the state of Michigan, subsequently, for about eight years. During that time Mr. Cooke received and used in his business money belonging to his wife, amounting to about $250. From Michigan they removed to Rhode Island, and while residing there, about the year 1847, he received of her money the further sum of about $300, and afterwards about $200 more. These sums make up the whole consideration, so far as there was a valuable one, moving from the wife to the husband, to support this conveyance. For a long time prior to the purchase of the property in question, Mr. Cooke contemplated and intended that the money so received by him should, at some time, be restored, but no note or other obligation was given for the money, and no account or memorandum of it was made by either party.

The laws of this state, and probably of most or all of the states, recognize the separate property of married women, and protect that property from the husband's creditors. It does not appear to us that these several sums of money were regarded by the parties at the time as the sole and separate estate of the wife, in such sense that when received by the husband the relation of debtor and creditor was created between them. We do not think that this deed to the wife can be sustained on the ground of a valuable consideration which had previously thus passed from her to her husband. We reach this result without taking into account the great inadequacy of the consideration, such as it was, to the value of the estate conveyed.

Can the title of Mrs. Cooke to this property be vindicated, regarding it as a voluntary conveyance to her from her husband?

What was his pecuniary condition at the time of the conveyance? He was in business as a boot and shoe dealer, and considering his resources, was largely in debt. He had real estate worth, above the incumbrances, $3,850, and his

bills receivable, fixtures, and stock in trade, per inventory, amounted to about the sum of $9,850. His debts were $7,775.

This was certainly not a very encouraging show to warrant a man in making, or procuring to be made, a voluntary conveyance to his wife of property, worth from three to four thousand dollars, to secure it to her. True, his assets, on paper, exceeded his liabilities by that sum and more. But while debts obstinately refuse, until paid, to diminish a single unit in the aggregate; in fact, while they swell in amount, day by day, in the column of interest, it is universal experience that assets, especially when consisting of remnants of stocks of merchandise, diminish each day in value; oftentimes in a rapidly increasing ratio. On the 5th of September, 1871, less than seventeen months from the time of this conveyance, Mr. Cooke makes an assignment under our insolvent law. His debts were then $11,479.98, and his assets but $3,500.

But it is said that the debts which existed at the time that this conveyance was made, have since, with one exception, been paid; and that a voluntary conveyance can be impeached only by those who were creditors at the time; not by subsequent creditors.

This principle clearly has no application where there has been a continued, unbroken indebtedness. The debts are owed, though they may be due to new creditors. It is a most unsubstantial mode of paying a debt, to contract another of equal amount. It is the merest fallacy to call such an act getting out of debt. From the time of this conveyance Mr. Cooke continued to be in debt, and at the time of this assignment that indebtedness had largely increased. His means of payment had even more largely diminished. That diminution, we think, may be largely due to the difference between his stock at inventory prices, and the cash proceeds of actual sales.

The conveyance of this estate to Mrs. Cooke cannot be sustained against the claims of creditors. Actual fraud is not imputed to Mr. Cooke in the finding; of course we impute none. It is the established policy of our law to hold a man's

property subject to the payment of his just debts, and to regard every conveyance, prejudicial to creditors, not founded on adequate consideration, as fraudulent, no matter what ties of blood or affection may have prompted the conveyance. We recognize the natural and moral obligation to provide for a wife and children ; but this obligation must not be discharged at the expense of one, to say the least, certainly as high ; that of paying debts. A remark of the Master of the Rolls, in the case of *Taylor* v. *Jones*, 2 Atk., 603, is worthy of remem brance : " Though I have always a great compassion for wife and children, yet, on the other side, it is possible that if creditors should not have their debts, their wives and children may be reduced to want."

We advise the Superior Court to pass a decree in conformity with these views, and if it be necessary for the plaintiff to amend his bill, in order to conform to the finding, we advise the allowance of such an amendment.

In this opinion the other judges concurred ; except CARPENTER, J., who did not sit.