**In re Winthrop E. BAUM, Debtor.**

**Richard M. COAN, Trustee, Plaintiff,**

v.

**James BETTE, Peter Bette, and White Mountain Construction Company, Defendants.**

Bankruptcy No. 5-88-00137.
Adv. No. 90-5041.

United States Bankruptcy Court,
D. Connecticut.

Jan. 8, 1993.

---

E. Huntington Deming, Coan, Lewendon & Royston, New Haven, CT, for plaintiff.

Mark Oppenheimer, Waterbury, CT, for defendant Peter Bette.

## MEMORANDUM AND ORDER ON LIABILITY FOR A PREFERENTIAL TRANSFER

ALAN H.W. SHIFF, Bankruptcy Judge.

The chapter 7 trustee commenced this adversary proceeding to set aside a preferential transfer to the White Mountain Construction Company and its general partners, James and Peter Bette, and to recover the value of the property transferred. For the reasons that follow, Peter Bette is jointly liable for the value of the property transferred.

### BACKGROUND

Prior to June 1988, James Bette and Peter Bette were construction contractors doing business as White Mountain Construction Company. At that time, the chapter 7 debtor, Winthrop E. Baum, doing business as WEB Construction Company, was indebted to White Mountain in the amount of $204,487.47. In June 1988, James Bette and Peter Bette were hired by WEB Construction. On December 8, 1988, WEB Construction transferred equipment valued at $55,000 to White Mountain in a transaction arranged by James Bette. Subsequently, the equipment was sold, but it is uncertain what became of the proceeds.

On December 20, 1988, Baum commenced a case under chapter 11 of the Bankruptcy Code, which was converted to a case under chapter 7 on July 19, 1989. On February 16, 1990, the chapter 7 trustee commenced the instant adversary proceeding against James Bette, Peter Bette, and White Mountain, seeking to avoid the December 8, 1988 transfer ("the Transfer") as preferential and to recover the value of the property transferred. *See* Code §§ 547(b) and 550(a). On October 31, 1990, a default judgment entered against James Bette,[1] and on February 12, 1992, summary

---

1. Default entered against James Bette pursuant to Rule 37(b)(2)(C) Fed.R.Civ.P., made applica-

ble by Rule 7037 Fed.R.Bankr.P., because he

judgment entered against White Mountain.[2]

## DISCUSSION

Peter Bette concedes that if White Mountain existed on December 8, 1988, the Transfer would be a preference as to White Mountain, under § 547(b), and White Mountain would be liable to the bankruptcy estate for the value of the property transferred. *See* § 550(a). He further concedes that if White Mountain is liable to the estate, he is liable also. He contends, however, that White Mountain was not in existence on that date because it had been dissolved.

■■■ Peter Bette's argument is unavailing. In determining the status of a partnership, courts must look to state law. *See e.g., Ryan v. Brophy*, 755 F.Supp. 595, 597 (S.D.N.Y.1991) (New York state law governs the liability of partners). Under Connecticut law: "[o]n dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Conn.Gen.Stat. § 34–68.

> (1) After dissolution a partner can bind the partnership ... (a) By any act appropriate for winding up partnership affairs or completing the transactions unfinished at dissolution.

Conn.Gen.Stat. § 34–73.

A dissolved partnership is not bound by the act of a partner "where the partner has no authority to wind up partnership affairs." Conn.Gen.Stat. § 34–73(3)(c). Assuming *arguendo* that the dissolution of White Mountain occurred prior to December 8, 1988,[3] White Mountain would still have existed for the purposes of winding up its affairs.

There was no allegation that James Bette wrongfully dissolved the partnership or that there was an agreement limiting his authority, thus James Bette had the authority to wind up the affairs of White Mountain. *See* Conn.Gen.Stat. § 34–75 ("Unless otherwise agreed the partners who have not wrongfully dissolved the partnership ... [have] the right to wind up the partnership affairs.").

The question evolves: was the Transfer "appropriate for winding up" the affairs of White Mountain? I conclude that it was. In reaching that conclusion I recognize that Connecticut has adopted the Uniform Partnership Act (the "UPA"). *See* Conn.Gen.Stat. §§ 34–39 to 34–82. The UPA is to be construed in such a way as to "make uniform the law of those states which enact it," Conn.Gen.Stat. § 34–42, and courts which have construed the same provision of the UPA as Conn.Gen.Stat. § 34–73(1) have reached similar conclusions.

■■ Courts have given wide latitude in construing what is "appropriate for winding up the affairs" of a dissolved partnership. In *Majer v. Schmidt*, 169 A.2d 501, 564 N.Y.S.2d 722 (N.Y.App.Div.1991), a partner's conversion of a client's funds to satisfy a dissolved partnership's liability was appropriate for winding up the affairs of the partnership. The execution of waivers, which gave the consent of a dissolved partnership to the extension of the statute of limitations for the assessment of valid excise taxes owed by the partnership, was appropriate for winding up that partnership's affairs. *Adelman v. U.S.*, 304 F.Supp. 599, 601–602, *aff'd*, 440 F.2d 991 (9th Cir.1971). The court reasoned that the dissolution of a partnership revokes the power of partners to create new contracts but does not affect their authority to settle or wind up existing partnership concerns and affairs. *Id.* at 602. The prosecution of an antitrust action in the name of a dissolved partnership also was held to be appropriate for winding up the affairs of a

---

failed to respond to interrogatories and did not attend a deposition.

**2.** A motion for summary judgment against White Mountain was uncontested. The issue of Peter Bette's liability was expressly reserved for trial.

**3.** The evidence strongly suggests that White Mountain was not dissolved prior to December 8, 1988, but that issue need not be reached.

partnership. *Leh v. General Petroleum Corp.*, 165 F.Supp. 933, 937 (C.D.Cal.1958).

■ The Transfer resulted in the partial payment of a debt owed to White Mountain and was "appropriate for winding up" White Mountain's affairs. Moreover, it was a preferential transfer and White Mountain is liable to the estate for $55,000.00, the value of the property transferred. *See* §§ 547(b) and 550(a)(1). As noted, *supra* p. 725, Peter Bette has conceded that his liability is derived from the liability of White Mountain, but, rather than liability being imposed under § 550(a), he is jointly liable to the estate under Connecticut law as a partner of White Mountain. *See* Conn.Gen.Stat. § 34–53 ("All partners are liable ... (b) jointly for all ... debts and obligations of the partnership").

### ORDER

For the foregoing reasons, Peter Bette is liable to this bankruptcy estate for $55,000, and IT IS SO ORDERED.