In re Kjell J. ANDERSEN, Debtor.

Richard M. COAN, Trustee, Plaintiff,

v.

Kjell J. ANDERSEN and Elaine R. Andersen, Defendants.

Bankruptcy No. 91–51487.
Docket Id. No. 18.
Adv. No. 92–5245.
Docket Id. No. 21.

United States Bankruptcy Court,
D. Connecticut.

May 6, 1994.

---

Jan A. Marcus, Nasser & Marcus, Westport, CT, for plaintiff.

Edward T. Krumeich, Ivey, Barnum & O'Mara, Greenwich, CT, for defendant Elaine R. Andersen.

### MEMORANDUM AND ORDER ON DEFENDANT ELAINE ANDERSEN'S MOTION TO ORDER TRUSTEE TO ABANDON PROPERTY AND TO LIFT STAY AND MOTION FOR SUMMARY JUDGMENT

ALAN H.W. SHIFF, Bankruptcy Judge.

The chapter 7 trustee commenced this adversary proceeding on August 28, 1992, to recover an allegedly fraudulent transfer of an interest in a residence by the debtor to his wife, Elaine Andersen ("Andersen"), on December 8, 1986. Andersen seeks summary judgment on the grounds that (i) the statute of limitations bars the action, and (ii) the 1986 transfer was not fraudulent as a matter of law. In the alternative, she asks for partial summary judgment that she is entitled to one-half of the proceeds from the sale of the residence presently held in escrow. She also moves for an order that the plaintiff abandon his claim to either all or one-half of the proceeds and for an order lifting the automatic stay. For the reasons that follow, I conclude that partial summary judgment may enter in Andersen's favor, but that her motions in all other respects must be denied.

### BACKGROUND

On November 27, 1978, the debtor and Andersen purchased a residence for $240,-

000.00, with each owning a one-half interest. In June 1984 the debtor organized the Glenbrook Enterprises Limited Partnership ("Glenbrook") under Connecticut law and solicited limited partnership interests. The debtor was the sole general partner. Glenbrook was created to purchase, improve, rent, and sell an office building in Wilton, Connecticut, pursuant to an Amended and Restated Agreement of Limited Partnership (the "Partnership Agreement"), the terms of which were amended by a Fourth Amendment to the Amended and Restated Certificate of Limited Partnership (the "Amendment"). *See Affidavit of Alan R. Spirer in Opposition to Motion for Summary Judgment,* February 11, 1993, at ¶ 7 and Exhibits C and D thereto.[1] Glenbrook purchased that building in July 1984. The debtor as general partner was given full management authority over Glenbrook's assets and had the duty to make annual reports to the limited partners (the "Limiteds") regarding partnership affairs; he was, however, precluded from selling substantially all of Glenbrook's assets without the written consent of a majority in interest of the Limiteds. Partnership Agreement at ¶¶ 10(a), (b), (e), (j); 26. Under the Partnership Agreement, the Limiteds were entitled to ongoing distributions of 90 percent of "Available Cash," defined to include net operating income, following the end of each calendar year. Partnership Agreement at ¶ 7; Amendment at ¶ 8. In addition, upon sale or refinancing of an asset, following payment of creditors, funding of reserves, and reimbursement of capital accounts, the Limiteds were entitled to 90 percent of the net proceeds. Partnership Agreement at ¶ 8; Amendment at ¶ 8.

On November 20, 1986, the defendants executed a letter agreement (the "Andersen Agreement") describing a proposed transfer of the debtor's interest in the residence to Andersen, *see Supplemental Affidavit of Elaine Andersen,* January 29, 1993, Exhibit E, and on December 8, 1986, the debtor executed a deed (the "Deed") conveying his one-half interest in the residence to Andersen. *See Supplemental Affidavit of Elaine*

*Andersen,* Exhibit C. The Deed recited consideration of $1 and indicated that no conveyance tax was paid. On that date, Andersen executed an Open–End Mortgage Deed (the "Mortgage") in favor of Connecticut National Bank ("CNB") to secure a Commercial Promissory Grid Note in the amount of $150,000.00 (the "Note"). *See Supplemental Affidavit of Elaine Andersen,* Exhibit D. The sole maker of the Note was Action Word Pros, Inc., a Connecticut corporation ("Action"). The relationship of the defendants to Action is discussed *infra* at pp. 526–27. The Deed and Mortgage were recorded in the Weston town land records on December 15, 1986.

In December 1987, Glenbrook sold its office building for approximately $1.15 million. Although there were allegedly net sales proceeds of $164,000.00, no distribution was made to the Limiteds. *Affidavit of Alan R. Spirer,* ¶¶ 8, 11. In May 1989 the Limiteds sued the defendants in Connecticut Superior Court alleging that the debtor failed properly to account for proceeds of the sale in breach of the partnership agreement, that he breached his fiduciary duty, and asserting related claims. They also alleged that the 1986 transfer of the debtor's interest in the residence was made with the intent to avoid debts to the Limiteds for which the debtor knew he would be liable. *See Third Revised Complaint,* Exhibit E to *Affidavit of Elaine Andersen,* December 23, 1992. The Limiteds further alleged that the transfer of the residence rendered the debtor insolvent, and that he became liable for the debt to them when the partnership agreements were executed in 1984. They sought damages, an accounting, and the setting aside of the conveyance to Andersen, and they filed a lis pendens against the residence.

In November 1990, Andersen sold the residence for $540,000.00. This not only paid off all mortgages, including the $150,000.00 mortgage securing the CNB line of credit, but resulted in net proceeds of approximately $151,000.00. Pursuant to a stipulation dated November 14, 1990 in the Superior Court

---

1. Although the copies of these documents offered by the plaintiff are not fully executed, Andersen does not challenge their authenticity.

action (the "Stipulation"), the parties agreed that in exchange for the Limiteds releasing the lis pendens so that the residence could be sold, the net proceeds would be held in escrow "until there is a final adjudication in the above captioned action." *See Affidavit of Elaine Andersen*, Exhibit F, ¶ 3. The parties' attorneys were designated the trustees and the signature of both attorneys was required for a release of funds.

The debtor filed a chapter 7 petition on June 4, 1991. The plaintiff was thereafter appointed trustee, *see* §§ 701, 702, and, as noted, commenced this adversary proceeding on August 28, 1992.[2]

## DISCUSSION

### I. Summary Judgment

Rule 56(c) Fed.R.Civ.P., made applicable by Rule 7056 Fed.R.Bankr.P., provides that summary judgment shall enter when:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

When ruling on motions for summary judgment "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there are no material facts in dispute and all reasonable inferences are to be drawn and all ambiguities resolved in favor of the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

To defeat a properly supported motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading;" the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment will enter, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra*, 477 U.S. at 322, 106 S.Ct. at 2552. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party on that issue. *Vezzetti v. Pellegrini*, 22 F.3d 483, 485 (2d Cir.1994); *see Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993) ("When a defendant has moved for summary judgment on the ground that undisputed facts reveal that the plaintiff cannot establish an essential element of the claim, on which element the plaintiff has the burden of proof, and the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on that element, summary judgment should be granted.").

### A. Statute of Limitations

As a threshold issue, Andersen contends that the statute of limitations bars this

---

2. On September 5, 1991, the Limiteds moved for a modification of the stay to allow the Superior Court action to proceed to conclusion, noting that that action was ready for trial. The debtor objected, on the ground that the Limiteds' "interest in recovering the property which may have

been fraudulently conveyed simply vests in the Trustee" and the trustee "can and undoubtedly will pursue the Movants' claims against the Petitioner herein." Debtor's *Memorandum of Law*, October 11, 1991. The Limiteds' motion to modify the stay was never prosecuted.

action. I conclude that it does not. The instant adversary proceeding is brought under § 544(b), which provides in relevant part:

The trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title ...

Andersen contends that the plaintiff could not bring this action on behalf of a hypothetical creditor because the statute of limitations expired prepetition. The fallacy of her argument is that she appears to be reading the references to hypothetical creditors in § 544(a) into § 544(b). Here, the plaintiff is asserting the Limiteds' cause of action, not that of a hypothetical creditor. It is apparent from the plain language of § 544(b) that if a creditor has a cause of action which is not time barred, the trustee's derivative action under § 544(b) is likewise not time barred. *Mancuso v. Continental Bank Nat'l Ass'n Chicago (In re Topcor, Inc.)*, 132 B.R. 119, 123–24 (Bankr.N.D.Tex.1991); *United States v. Gleneagles Inv. Co., Inc.*, 565 F.Supp. 556, 583 (M.D.Pa.1983) (Bankruptcy Act), *aff'd sub nom. United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987). Andersen acknowledges that the Limiteds timely filed their state court action, *Defendant Elaine Andersen's Memorandum in Support of Motion for Summary Judgment*, December 29, 1992, at

p. 8, and that this action is the same as the fifth count of the complaint in that court, *see Complaint By Trustee to Avoid Transfer of Interest Pursuant to Section 544* at ¶ 10; *Amended Answer of Defendant Elaine R. Andersen* at ¶ 1. The applicable statute of limitations for the plaintiff's action is two years after the plaintiff's appointment, *see* § 546(a), and has been met here. *See Steege v. Lyons (In re Lyons)*, 130 B.R. 272, 279 (Bankr.N.D.Ill.1991).[3]

Andersen further argues that the Limiteds were not existing creditors as of the date of the allegedly fraudulent transfer so the plaintiff is barred from asserting their cause of action. However, whether the Limiteds were existing creditors, and whether the plaintiff's cause of action must fail if they were not, are among the issues tested by this summary judgment motion.

**B. Fraudulent Transfer**

 As noted, the plaintiff's action is brought under § 544(b).[4] The "applicable law" referred to in that section is the applicable state fraudulent conveyance statute. "A fraudulent conveyance claim is governed by the law of the state in which the property is located." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir.1991). The plaintiff's action therefore appropriately utilizes former Conn.Gen.Stat. § 52–552 (1949 Conn.Rev.S. 8295),[5] which provided in relevant part:

---

**3.** While I need not decide the issue, Andersen's reliance on *Travelers Indem. Co. v. Rubin*, 209 Conn. 437, 551 A.2d 1220 (1988) for the proposition that a three year statute of limitations applies to actions under Conn.Gen.Stat. § 52–552 is misplaced. Section 52–552 was not at issue in *Travelers*. Because the claimant had an unliquidated tort claim, the claimant was not a creditor within the meaning of § 52–552. *Id.*, 209 Conn. at 440, 551 A.2d 1220. The court applied the three year tort statute of limitations contained in Conn.Gen.Stat. § 52–577 because the claimant's action was a common law tort action for fraudulent conveyance. The court distinguished a Superior Court case which held that there is no express statute of limitations for actions under § 52–552. *Id.*, 209 Conn. at 441 n. 4, 551 A.2d 1220 (discussing *Einbinder & Young, P.C. v. Soiltesting, Inc.*, 36 Conn.Supp. 277, 418 A.2d 95 (1980)). The Limiteds hold a contract claim in addition to tort claims.

**4.** Section 544(b) requires that the Limiteds' claim be "allowable." While Andersen argues

that the Limiteds were not creditors of the debtor at the time of the allegedly fraudulent transfer, she does not assert that the Limiteds' claim arising *after* the sale of Glenbrook's asset but before the petition date is not allowable under § 502. It is noted that the plaintiff may be required to establish the amount of the Limiteds' claim at trial. *See Doty v. Wheeler*, 120 Conn. 672, 679, 182 A. 468 (1936); *Derderian v. Derderian*, 3 Conn.App. 522, 525, 490 A.2d 1008, 1011, *cert. denied*, 196 Conn. 810, 811, 495 A.2d 279 (1985) (the plaintiff in a fraudulent conveyance action is generally required to establish the underlying debt because the conveyance is voidable only to the extent necessary to satisfy that debt).

**5.** Because § 52–552 is an adoption of the common law fraudulent conveyance action, *Molitor v. Molitor*, 184 Conn. 530, 535, 440 A.2d 215 (1981), decisions analyzing the common law action are persuasive in analyzing the statutory action. Connecticut's Uniform Fraudulent Transfer Act ("CUFTA") was enacted June 25,

All fraudulent conveyances ... made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only ... to whom such debt or duty belongs.

Under § 52–552, a "conveyance is fraudulent if made with actual intent to avoid any debt or duty *or* if made without any substantial consideration by a person who is or will be thereby rendered insolvent." *Molitor v. Molitor,* 184 Conn. 530, 536, 440 A.2d 215 (1981) (emphasis added). Thus, the plaintiff may succeed either by proving constructive fraud (i.e., a lack of substantial consideration and existing or resulting insolvency) or by proving actual fraud; the plaintiff "need not satisfy both alternatives." *Tyers v. Coma,* 214 Conn. 8, 11, 570 A.2d 186 (1990).[6] Under either alternative, the plaintiff has the burden of proof. *Id.*[7]

The plaintiff alleges that the Limiteds were not informed of the pending sale; that the debtor concealed the existence of sale proceeds from them; and that the debtor improperly mortgaged Glenbrook's asset and used some of the proceeds for other entities in which the debtor was involved. *Affidavit of Alan R. Spirer* at ¶¶ 5, 9, 11. Moreover, the plaintiff alleges that Glenbrook and the other entities in which the debtor was in-

volved were experiencing financial difficulties in December of 1986; that both the debtor and Andersen knew of those financial difficulties; and that the debtor's conveyance of his interest in the residence to Andersen was an effort to shield that asset from creditors including the Limiteds. *Affidavit of Alan R. Spirer* at ¶¶ 15, 16.

### 1. Constructive Fraud

#### a. Existing Creditors

Andersen first argues that the Limiteds were not creditors at the time the debtor transferred his interest to her, because any obligation the debtor owed them did not arise until Glenbrook sold its office building, which was after the alleged fraudulent transfer. The Limiteds, however, allege that they *were* creditors of the debtor at the time he made the transfer, *see Affidavit of Alan R. Spirer,* at ¶ 13, and that allegation is supported by the Partnership Agreement, which created an ongoing right of payment in favor of the Limiteds. *See* Conn.Gen.Stat. Ann. § 34–20e (West 1987) ("At the time a partner becomes entitled to receive a distribution, he has the status of, and is entitled to all remedies available to, a creditor of the limited partnership with respect to the distribution."). The Partnership Agreement required the debtor to account for disbursements made on behalf of Glenbrook. As sole general partner, the debtor was liable for

---

1991, after all of the events relevant to this fraudulent transfer action and after commencement of the Limiteds' state court action. As both parties agree that former Conn.Gen.Stat. § 52–552 is applicable to this action, I need not decide whether CUFTA could be applied retroactively in this proceeding. *See In re Lyons, supra,* 130 B.R. at 278 (Illinois Uniform Fraudulent Transfer Act would not be applied retroactively); *Chrysler Credit Corp. v. Berman,* 1993 WL 214623 (Conn. Sup.Ct., June 10, 1993) (CUFTA is not retroactive).

6. Andersen asserts that the facts of this case are similar to those in *Tyers,* in which the court refused to overturn an interspousal transfer. They are not. In *Tyers* the trial court found that the grantor-husband owed a legitimate debt to the grantee-wife which *exceeded* the value of the property interest conveyed, and that that debt provided sufficient consideration for the husband's conveyance of property to the wife. 214 Conn. at 12, 570 A.2d 186. That straightforward

transaction in no way resembles the transaction at issue in this case.

7. Courts have used various standards in applying the level of proof necessary to sustain a party's burden. For example, under Connecticut law, the plaintiff must adduce clear, precise, and unequivocal evidence on the issue of fraudulent intent. *Tyers v. Coma, supra,* 214 Conn. at 11. The standard for constructive fraud is less clear. *Compare Ossen v. Bernatovich (Matter of Nat'l Safe Northeast, Inc.),* 76 B.R. 896, 901 (Bankr. D.Conn.1987) (preponderance of the evidence standard) *with Tessitore v. Tessitore,* 31 Conn. App. 40, 42–43, 623 A.2d 496, 498 (1993) (clear and convincing evidence standard). In the context of dischargeability proceedings, the Supreme Court has held that the preponderance standard is appropriate irrespective of the standard that applies to the underlying debt. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). I need not decide which standard is applicable here because I conclude that even under the clear and convincing standard, a rea-

Glenbrook's obligations. *Id.,* §§ 34–17(b), 34–53(b); *Coan v. Bette (In re Baum),* 148 B.R. 723, 726 (Bankr.D.Conn.1993). While the evidence also indicates that Glenbrook was insolvent by December of 1986, *see infra,* pp. 527–28 & n. 14, the record does not negate the possibility that distributions should have been made to the Limiteds following the 1984 and 1985 calendar years, and that the debtor remained liable for those distributions as of the date of the transfer. It also appears that Glenbrook's apparent insolvency may have resulted from the breach of the debtor's duties to his partners, including his alleged encumbering of Glenbrook's assets to secure debts which were used for the benefit of other entities in which the debtor was a principal. *See Affidavit of Alan R. Spirer,* at ¶¶ 5, 9–11. The debtor's obligations to the Limiteds at any given time remain open to legitimate factual dispute.[8]

Further, even if the debtor owed the Limiteds no money when the alleged fraudulent conveyance occurred, he nevertheless owed them a "debt or duty" within the meaning of § 52–552. Under Connecticut law, the holder of a contingent or unmatured obligation is entitled to set aside a constructively fraudulent transfer even if the transfer occurs before the occurrence of the contingency on which the debt depends. *Trachten v. Boyarsky,* 122 Conn. 465, 470–71, 190 A. 869 (1937) (payee of note was creditor of

indorser even though transfer was made when claim against indorser was contingent); *Second Nat'l Bank of New Haven v. Harris,* 122 Conn. 180, 184–85, 187 A. 910 (1936) (holders of renewal notes could set aside fraudulent transfer made prior to execution of renewal notes, since debt existed at time of transfer). The inclusion of holders of contingent or unmatured claims in the class of present creditors entitled to the protection of § 52–552 is supported by the broad definition of "creditor" contained in Connecticut's Uniform Fraudulent Transfer Act ("CUFTA"). While CUFTA is not applicable to this proceeding, *see supra,* note 5, it is largely a reflection of Connecticut's common law of fraudulent conveyances,[9] and defines a "creditor" to include one who holds a contingent or unmatured right to payment. Conn.Gen. Stat.Ann. § 52–552b(3), (4) (West Supp. 1994).[10]

It is also noted that, if actual fraud is proven, even future creditors may be entitled to set aside the fraudulent transfer. Accordingly, I conclude that the plaintiff has raised a legitimate factual issue as to whether the Limiteds were in fact creditors of the debtor at the relevant time.

### b. Consideration

Andersen also argues that the debtor received substantial consideration as a matter of law. Some consideration may exist

---

sonable juror could return a verdict in the plaintiff's favor.

**8.** This factual dispute exists at least in part because the debtor allegedly lost Glenbrook's records when a building was repossessed and he was locked out. *Affidavit of Alan R. Spirer,* Exhibit A, *Deposition of Kjell J. Andersen,* February 8, 1991, at pp. 23–25. The loss of the records occurred after the Limiteds' commencement of the state court lawsuit. The debtor kept no duplicates of the records, and he did not detail any efforts to retrieve them.

**9.** The Connecticut Supreme Court has held that "the UFCA [Uniform Fraudulent Conveyance Act] and cases decided thereunder are persuasive in determining the reach of § 52–552...." *D.H.R. Constr. Co. v. Donnelly,* 180 Conn. 430, 433 n. 1, 429 A.2d 908 (1980). While CUFTA differs from the UFCA in some respects, the UFCA's definition of creditor includes those holding contingent or unmatured claims. UNIF.FRAUDULENT CONVEYANCE ACT § 1 (1918).

**10.** Connecticut law supports the right of a future creditor to set aside a constructively fraudulent conveyance if the debtor's then-existing debts were not paid before the future creditor's obligation was created, or if the then-existing debts were paid off by the incurring of additional debt rather than from the debtor's earnings. *See Barbour v. Connecticut Mut. Life Ins. Co.,* 61 Conn. 240, 251, 23 A. 154 (1891); *Paulk v. Cooke,* 39 Conn. 566, 572 (1873); Edward A. Weiss, *Connecticut Fraudulent Conveyance Law,* 11 U.BRIDGEPORT L.REV. 489, 520–21 & nn. 139–142 (1991). The record supports the existence of debts owed by the debtor when the residence was transferred which remained unpaid as of the sale of Glenbrook's asset. I also note that, while a tort claimant whose claim has not been reduced to judgment is not owed a debt or duty within the meaning of § 52–552, such a claimant may maintain a common law fraudulent conveyance action. *Murphy v. Dantowitz,* 142 Conn. 320, 324–25, 114 A.2d 194 (1955). As noted, the Limiteds hold a claim for contract damages in addition to tort claims.

and yet not amount to substantial consideration within the meaning of § 52–552. *Siegel v. Bahre (In re Bahre)*, 23 B.R. 460, 464 (Bankr.D.Conn.1982) (assumption of a $21,-000.00 mortgage was not substantial consideration for an $85,000.00 residence); *Cook v. Bieluch*, 32 Conn.App. 537, 551, 629 A.2d 1175, 1183, *cert. denied*, 228 Conn. 910, 635 A.2d 1229 (1993). Although Connecticut law does not presume a lack of consideration for an intra-family conveyance, *In re Bahre, supra*, 23 B.R. at 462, I find that there is a legitimate factual dispute as to this issue.

▮ The defendants' response to the plaintiff's claim that the conveyance was fraudulent is that the equity in the residence was approximately $300,000.00 at the time of the conveyance, the debtor's share was approximately $150,000.00, and his conveyance of his interest to Andersen resulted in an extension of credit to Action, which they allege is the debtor's corporation, in the same amount. Thus the transfer of his interest was for reasonably equivalent value. Andersen argues that the transaction was designed solely to protect her equity in the residence, *Affidavit of Elaine Andersen*, at ¶ 6. She relies on the Andersen Agreement to support that claim, but her argument is unavailing because her intent is irrelevant to the issue of whether the debtor received "substantial consideration" for his conveyance.[11] The debtor's acknowledgement in the Andersen Agreement that he received full and adequate compensation for the transfer of his interest is a self-serving, conclusory recitation of the ultimate issue to be determined. In fact, the debtor received none of the $150,-000.00 proceeds of the CNB line of credit; Action, a corporation, received all of it. *Affidavit of Kjell Andersen*, December 23, 1992, at ¶¶ 4, 5; *Affidavit of Elaine Andersen*, at ¶ 8. *Cf. Coan v. Stone Oil Co. (In re Globe Tanker Servs., Inc.)*, 151 B.R. 23, 24–25 (Bankr.D.Conn.1993) (transfers solely for the benefit of third parties do not furnish reasonably equivalent value under 11 U.S.C. § 548

unless the debtor's net worth is unaffected thereby).

There is no allegation that Action was the debtor's alter ego and that a corporate veil should be pierced, nor does the present record support such an allegation.

> [I]n Connecticut a court will disregard the corporate structure and pierce the corporate veil " 'only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice.' " *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.*, 187 Conn. 544, 557, 447 A.2d 406 (1982).

*SFA Folio Collections, Inc. v. Bannon*, 217 Conn. 220, 230–31, 585 A.2d 666, *cert. denied*, 501 U.S. 1223, 111 S.Ct. 2839, 115 L.Ed.2d 1008 (1991); *see also Hess v. L.G. Balfour Co., Inc.*, 822 F.Supp. 84, 86 (D.Conn.1993) (discussing instrumentality and identity theories under Connecticut law); *Saphir v. Neustadt*, 177 Conn. 191, 209, 413 A.2d 843 (1979) ("Courts will ... disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor."); *cf. Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir.1993) (discussing requirements for disregarding corporate structure under New York law).

It is not clear from this record that Andersen or others did not benefit from the loan to Action; to the extent they did, that benefit would reduce any benefit flowing to the debtor. While Andersen states that the debtor "owned" Action, *see Elaine Andersen's Statement of Material Facts as to Which There is No Genuine Issue to be Tried*, August 30, 1993, at ¶ 8, the debtor's deposition testimony indicated that he was "virtually the sole shareholder" but that "two of the employees were shareholders." *Affidavit of Alan R.*

---

**11.** The defendants also refer to a letter from their attorney, *Affidavit of Kjell Andersen*, December 23, 1993, at ¶ 3 and Exhibit A. That letter merely describes the proposed transaction, and lends no support to the argument that the consideration was sufficient as a matter of law. In fact, the letter recites, apparently incorrectly, that Andersen was to guarantee the line of credit to Action.

*Spirer,* Exhibit A, *Deposition of Kjell J. Andersen,* February 8, 1991, at pp. 77–78.

Finally, Andersen asserts that the fact that there were $151,000.00 in net proceeds from the November 1990 sale of the residence shows that the $150,000.00 Action received from the CNB line of credit was sufficient consideration under Connecticut law. *Defendant Elaine Andersen's Memorandum in Support of Motion for Summary Judgment,* December 29, 1992, at p. 6. But as noted, the residence was sold for $540,000.00 in November 1990. The Stipulation indicates that as of the December 8, 1986 conveyance from the debtor to her, the liens encumbering the property did not exceed $178,000.00. *See* Stipulation at ¶ 2(a), (b), (d) and (e). If the residence had the same $540,000.00 value in December 1986, the equity in the residence at that time would have been approximately $362,000.00, making the debtor's one-half interest worth approximately $181,000.00.[12] The debtor's asserted valuation *might* be correct and the property *may* have appreciated in value; it is also possible that the residence was worth more in December 1986 than in November 1990. Andersen has not produced the appraisal allegedly supporting her estimate of the value of the equity at the time of the transfer. Drawing reasonable inferences in favor of the plaintiff, I am constrained to find that even if the money paid to Action was in fact paid to the debtor, there remains a genuine issue of material fact on the issue of adequate consideration.

### c. Insolvency

"A person is insolvent for the purpose of determining the existence of a fraudulent conveyance if he is unable to pay his debts existing at the time of the transfer.... The proper procedure for determining solvency is to balance assets against liabilities." *United States v. Edwards,* 572 F.Supp. 1527, 1534, 1535 (D.Conn.1983); *Molitor v. Molitor, supra,* 184 Conn. at 536, 440 A.2d 215.[13] Andersen argues that the debtor was not insolvent or rendered insolvent by the transfer. The plaintiff disputes that allegation. *Affidavit of Alan R. Spirer,* at ¶ 17.

Andersen does not even assert an absence of a genuine issue of fact on the issue of insolvency, but instead argues that the presence of substantial consideration renders the issue irrelevant. *Reply Memorandum of Elaine Andersen,* April 14, 1993, at p. 4; *Elaine Andersen's Statement of Material Facts as to Which There is No Genuine Issue to be Tried.* Moreover, she has failed to meet her burden of showing either evidence negating the claim of insolvency or the absence of evidence supporting that claim. *See Celotex Corp. v. Catrett, supra,* 477 U.S. at 325, 106 S.Ct. at 2553.

Andersen asserts that the funds flowing to Action from the CNB loan left the debtor's balance sheet unchanged. In view of the fact that the loan proceeds went to Action and that the value of his transferred interest is uncertain, that contention is subject to legitimate dispute.

The plaintiff has averred facts tending to show the debtor's inability to pay his debts. The Stipulation shows that the sale of the residence in 1990 satisfied tax obligations dating from 1985, indicating that the debtor was unable to pay his tax obligations. Further, as noted, the debtor was liable for Glenbrook's debts to third parties. The evidence shows that Glenbrook could not pay its debts as they became due in December of 1986, and that the purpose of obtaining the line of credit from CNB at that time was to infuse needed capital. *Affidavit of Alan R. Spirer,* Exhibit A, *Deposition of Kjell J. Andersen,* at pp. 34, 95, 119–121.[14] It is certain-

---

12. As the Stipulation shows, the $151,000.00 in proceeds is net not only of liens which had attached to the residence as of December 8, 1986, but also of substantial liens which attached after that date, real estate commissions, conveyance taxes, and attorneys' fees. Stipulation at ¶ 2(f), (g) and (h), 3. It is therefore coincidental that the amount of the net proceeds almost equalled the amount of the CNB line of credit to Action.

13. Some courts have held that the debtor's income stream may also be relevant in determining solvency. *See Patrocinio v. Yalanis,* 4 Conn.App. 33, 37–38, 492 A.2d 215, 218 (1985).

14. The debtor stated that Glenbrook's financial problems began in 1985 shortly after the office building was acquired. Deposition at pp. 68–72. By December of 1986, the defendants decided that they would either have to "close up and let the partnership and the business go at that

ly reasonable to infer from that evidence that the debtor, as the principal of Glenbrook and other entities which were borrowing against Glenbrook's assets, could not meet his obligations existing in December 1986. *See Bizzoco v. Chinitz,* 193 Conn. 304, 312–13, 476 A.2d 572 (1984) (corporation's financial difficulties were evidence that 50 percent shareholder could not pay his debts at time of fraudulent transfer).[15]

■ Finally, insolvency need not be proven where actual fraudulent intent is proven. *Belford v. Martin–Trigona (In re Martin–Trigona),* 763 F.2d 503, 506 (2d Cir.1985).

## 2. Actual Fraud

■ If it is proven that the conveyance was made with fraudulent intent in which the grantee participated, then every conveyance made with actual intent to defraud either present or future creditors is fraudulent and will be set aside. *Wilcox v. Johnson,* 127 Conn. 539, 542, 18 A.2d 372, 373 (1941); *Allen v. Lyness,* 81 Conn. 626, 631, 71 A. 936 (1909); *Bassett v. McKenna,* 52 Conn. 437, 442 (1884); *Rocklen, Inc. v. Radulesco,* 10 Conn.App. 271, 277–78, 522 A.2d 846, 849 (1987). Thus, if the plaintiff proves the conveyance was intended to defraud the Limiteds as known future creditors, their status as existing creditors at the time of the conveyance would be immaterial. Further, the plaintiff may prevail if he shows that the defendants had the specific intent to avoid a debt to any creditor, if the conveyance also had the necessary effect of avoiding

the Limiteds' debt. *Peerless Mfg. Co. v. Goehring,* 131 Conn. 93, 95, 38 A.2d 5 (1944).

As the Second Circuit has held, it is difficult though certainly not impossible for the defendant in an action alleging actual fraudulent intent to prevail on its motion for summary judgment:

> The intent of the parties to the transaction "is purely a question of fact." *Tyers v. Coma,* 214 Conn. 8, 11[, 570 A.2d 186] (1990); *Zapolsky v. Sacks,* 191 Conn. 194, 200[, 464 A.2d 30] (1983).... Ordinarily, such issues are inappropriate for summary judgment. However, "the mere incantation of intent or state of mind [does not] operate as a talisman to defeat an otherwise valid [summary judgment] motion." *Meiri [v. Dacon], supra,* 759 F.2d [989,] at 998 [ (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) ]. Rather, "[t]he state of mind exception ... is appropriate only where solid circumstantial evidence exists to prove plaintiff's case." *Clements [v. County of Nassau], supra,* 835 F.2d [1000,] at 1005 [ (2d Cir. 1987) ].

*Citizens Bank of Clearwater v. Hunt, supra,* 927 F.2d at 711 (some citations omitted); *accord Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 16 (2d Cir.1993). A court "may not properly grant summary judgment where the issue turns on the credibility of witnesses." *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994).

■ A plaintiff faced with the hurdle of proving fraudulent intent on the part of a defendant must shoulder a difficult burden.

point," or mortgage the residence to obtain money for Action, Glenbrook, and other entities. Deposition at p. 119. By February of 1987, the debtor had placed a mortgage on the Glenbrook office building to secure over $400,000.00 in obligations to Action for "staffing and services" which Action provided to Glenbrook. Deposition at pp. 76–80. The debtor encumbered Glenbrook's asset with a $220,000.00 mortgage, some of the proceeds of which were received by Action and another entity. Deposition at pp. 67–68; *Affidavit of Alan R. Spirer,* Exhibit F. Glenbrook executed a $170,000.00 mortgage in favor of another entity in which the debtor had an interest in October of 1987; the debtor offered no explanation of the reason for that mortgage and had no records on the transaction. Deposition at pp. 86–87. The Glenbrook property was in fore-

closure by November of 1987. By December 8, 1987, when Glenbrook's asset was sold, "Glenbrook was so far in arrear with payments that that *literally put Action Word Pros and Gorham Press and [the debtor] out of business.*" Deposition at p. 95 (emphasis added).

**15.** I note that the plaintiff may not merely rest upon an allegation of insolvency in his pleadings if Andersen sustains her initial burden of pointing out the absence of evidence tending to support that allegation. *See Citizens Bank of Clearwater v. Hunt, supra,* 927 F.2d at 713. However, the evidence of insolvency is stronger here than in *Hunt,* where the plaintiff only offered evidence that the defendant was having trouble making first mortgage payments.

If a defendant in fact committed fraud, it is completely unrealistic to expect an admission of that transgression; rather, a plaintiff is likely to encounter consistent denials. In recognition of that reality, courts have held that fraudulent intent may be inferred from the circumstances surrounding the transfer. *United States v. Edwards, supra,* 572 F.Supp. at 1535. Indirect evidence of fraud may consist of the circumstances of the transfer and the conduct and action of the parties to the alleged fraudulent transfer with respect to the possession, management and control of the premises. *Id.* Indeed, fraudulent intent "is ... not ordinarily proven by direct evidence, but rather, by inference from other facts proven—the indicia or badges of fraud." *Zapolsky v. Sacks,* 191 Conn. 194, 200, 464 A.2d 30 (1983) (citing close relationship of grantor-husband and grantee-wife and failing condition of husband's business among indicia of fraud).

 As noted, the plaintiff alleges actual intent by the debtor and Andersen to avoid a debt or duty. *Affidavit of Alan R. Spirer,* ¶¶ 15, 16. Whether Andersen intended to protect her equity in the residence is irrelevant to the issue of whether she and the debtor also intended to place the debtor's equity beyond the reach of his creditors. The plaintiff's claim is supported by indicia of fraudulent intent, including the close relationship of the defendants; the facially inadequate consideration stated on the deed; the failure to pay transfer tax; the debtor's knowledge of his duties with respect to the Limiteds; the fact that the proceeds of the CNB loan were not received by the debtor, but by Action; the evidence that Action received substantial payments derived from Glenbrook's assets; and the evidence suggesting commingling of assets among the various entities in which the debtor was involved, *see Affidavit of Alan R. Spirer,* ¶ 9 and Exhibit F. As the plaintiff points out, Andersen knew that the debtor had to mortgage the residence to obtain funds to meet business obligations, and Andersen's insistence on structuring the transaction so as to protect her equity in the property is further evidence of her awareness of her husband's alleged financial difficulties. *Affidavit of Alan R. Spirer,* ¶ 16.[16] Had the defendants been confident of the solvency of the debtor and Action, the more obvious way to structure the transaction would have been for the debtor to have retained his interest and for both of the defendants to have executed the mortgage in favor of CNB.

 I disagree with Andersen's assertion that evidence as to the debtor's breach of his fiduciary duties to his partners is not relevant to defeat this motion. A general partner of a limited partnership owes at least a qualified fiduciary duty to his or her limited partners; that duty may be more or less exacting depending on the circumstances of the transaction. *See Konover Dev. Corp. v. Zeller,* 228 Conn. 206, 224–28, 635 A.2d 798, 808–09 (1994).[17] Here, evidence that the debtor breached his fiduciary and contractual duties to the Limiteds goes to his and Andersen's intent in conveying the residence to Andersen. That conveyance had the undeniable effect of removing assets from the debtor, who had a duty to account to his partners, to Andersen and then to Action, which had no such duty. *See Wilcox v. Johnson, supra,* 127 Conn. at 542, 18 A.2d 372 (evidence of partnership's failing circumstances at the time of husband-partner's conveyance to his wife supported finding of actual fraud).

The debtor's December 1986 conveyance could reasonably be construed as an attempt to place his interest in the residence beyond

16. *See generally* Weiss, *supra* note 10, at 500–504 & nn. 53–71 (discussing requirement under Connecticut law that the grantee "participate" in the fraud).

17. Proof of a fiduciary relationship under Connecticut law shifts the burden to the fiduciary to prove fair dealing by clear and convincing evidence. *Id.,* 228 Conn. at 229–30, 635 A.2d at 810. Thus, at trial, the debtor would have the burden of proving that he properly discharged his duties under the Partnership Agreement, to the extent that issue is relevant to his intent and to the issue of whether the Limiteds hold an allowable claim and the amount of that claim, *see* § 544(b). Because the debtor's fiduciary duty presumably would not extend to his disposition of his personal residence, it would appear that the plaintiff would retain the burden of proof on other issues relating to the alleged fraudulent transfer.

the reach of his creditors, and the plaintiff should be afforded the opportunity to prove that claim. *See D.H.R. Constr. Co., Inc. v. Donnelly,* 180 Conn. 430, 433, 429 A.2d 908 (1980) ("The terms of [§ 52–552] are broad enough to include every transaction by which creditors may be defrauded; it is not the nature or form of the transaction but the presence of fraud which brings a case within the prohibition of the statute."). The numerous material factual disputes surrounding the transfer as recounted here mandate the denial of Andersen's motion for summary judgment.

## II. Amount in Controversy and Motion to Abandon

Rule 56(d) Fed.R.Civ.P. provides in relevant part:

> If on [summary judgment] motion ... judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy....

Having concluded that disputed issues of material fact require a trial, I must now consider Andersen's contention that only one-half of the proceeds of the sale of the residence are subject to potential recovery by the plaintiff. I agree with that contention.

A creditor with a fraudulent conveyance claim may pursue only the specific property transferred or the proceeds thereof. *Derderian v. Derderian,* 3 Conn.App. 522, 529, 490 A.2d 1008, 1013, *cert. denied,* 196 Conn. 810, 811, 495 A.2d 279 (1985). The creditor, if successful, may void the transaction, which returns the fraudulently transferred property back to the debtor, so that it is available to satisfy the creditor's claim. The plaintiff here is authorized to recover the property transferred or, if the court so orders, its value, from Andersen as the initial transferee. *See* § 550(a)(1).

The plaintiff is not seeking to recover the value of the property at the time of the transfer. Rather, he is seeking to recover that portion of the escrowed funds that represents the fraudulently transferred property. The effect of the Stipulation, by which the plaintiff is bound as he stands in the Limiteds' shoes, was to substitute the net proceeds from the sale of the residence for the residence itself. If the debtor's conveyance of his one-half interest is avoided, only that one-half interest, or in the instant case the proceeds of its sale, are potentially recoverable by the plaintiff. Neither the plaintiff nor the Limiteds have attacked as fraudulent or otherwise the CNB mortgage or any of the other liens that were satisfied when the residence was sold. Had the debtor never conveyed his interest, the residence would still have been encumbered by the CNB mortgage and the subsequent liens at the time it was sold. In that event, only one-half of the proceeds now held in escrow could be reached by the debtor's creditors, or by the plaintiff on his derivative claim.

The plaintiff asserts that, because Andersen owned the residence when it was encumbered by the CNB mortgage in December of 1986, her equity was used to pay the mortgage when she sold the residence in November of 1990. But that argument is inconsistent with the plaintiff's primary assertion, i.e. that she was the rightful owner of only a one-half interest in the residence. If the conveyance to Andersen was fraudulent, she will not be permitted to retain the fruits of that fraud; the plaintiff points to no legal theory, however, permitting her to be further penalized by the forfeiture of her legitimately acquired one-half interest. *See Derderian v. Derderian, supra,* 3 Conn.App. at 529, 490 A.2d at 1013 (punitive damages are not recoverable under § 52–552).

Andersen's motion to order the plaintiff to "abandon" her one-half interest in the proceeds, and to lift the stay with respect to those funds, must be denied because the estate has no present interest in the proceeds. Because the proceeds were conveyed into the escrow account prepetition and nei-

ther the debtor nor Andersen had any right to recover the proceeds until the state court action was finally adjudicated, the proceeds never became estate property, even if the debtor might otherwise have had an interest in them. *See Musso v. New York State Higher Educ. Servs. Corp. (In re Royal Business School, Inc.)*, 157 B.R. 932, 940–42 (Bankr.E.D.N.Y.1993) (funds in escrow account created pursuant to prepetition agreement, which provided that funds were not to be released until judicial remedies were exhausted, was not property of the estate); *Shron v. M & G Promo Servs., Ltd. (In re Anthony Sicari, Inc.)*, 151 B.R. 60, 62 (S.D.N.Y.1993) (where debtor made deposit into state court registry more than 90 days prepetition under stipulation which did not permit any refund to the debtor, deposit was not property of the estate and could not be attacked as a preference); *Intercontinental Publications, Inc. v. Perry (In re Intercontinental Publications, Inc.)*, 131 B.R. 544, 548 (Bankr.D.Conn.1991) (prepetition transfer of funds into escrow account removed funds from control of debtor).[18] Further, as noted, the estate has no claim on the portion of the proceeds that arose out of the disposition of Andersen's one-half interest in the residence. Although I decline to order the plaintiff to "abandon" one-half of the escrowed proceeds, I note that the plaintiff has agreed to a modification of the Stipulation so that those funds will be paid to Andersen if I conclude that she has a right to them—as I do.

### ORDER

The defendant Elaine Andersen's Motion for Summary Judgment in Adv.P. No. 92–5245 is DENIED, except as stated below. The defendant Elaine Andersen's Motion to Order Trustee to Abandon Property and to Lift Stay, Docket Id. No. 18 in Case. No. 91–51487, is DENIED. Pursuant to Rule 56(d) Fed.R.Civ.P., I find there is no substantial controversy as to the maximum amount the plaintiff may recover from the escrow fund, i.e., one-half of the amount being held pursuant to the Stipulation.[19] Therefore, partial summary judgment may enter in Elaine Andersen's favor that the plaintiff may not recover the remaining one-half of those funds, and IT IS SO ORDERED.

---

18. Even if the debtor retained some interest in the funds, that interest only becomes estate property when and if the plaintiff actually recovers it in a fraudulent transfer action. *See* § 541(a)(3); *Fed. Deposit Ins. Corp. v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir.1992).

19. While the plaintiff may also be entitled to costs should he prevail, *see* Rule 7054(b), Fed. R.Bankr.P., it is not appropriate to deduct any amount from Andersen's share of the escrow for those costs.